**Petition of PROUVOST LEFEBVRE OF RHODE ISLAND, Inc.**

United States District Court
S. D. New York.
June 27, 1952.

Proskauer, Rose, Goetz & Mendelsohn, New York City (Eugene Eisenmann, Robert H. Radsch, New York City, of counsel), for petitioner.

Halperin, Natanson, Shivitz & Scholer, New York City (David I. Shivitz, Samuel L. Scholer, Theodore P. Halperin, New York City, of counsel), for respondents.

MURPHY, District Judge.

This is a motion to compel arbitration under the Federal Arbitration Act, 9 U.S. C.A. § 4, pursuant to a clause in a written contract for the sale of wool. Petitioner, a Rhode Island corporation engaged in selling wool top—a product resulting from the combing of raw wool—made a written contract on or about January 12, 1951 for sale to respondents, a New York partnership, of 100,000 lb. of fine top at $4.10 per lb. f. o. b. the combing plant or ex warehouse, to be shipped on respondents' instructions issued before delivery date. The contract was signed by petitioner in Boston on January 12th and was returned to it by mail signed by respondents in New York on January 18, 1951. Delivery date was specified as "February." The contract, on petitioner's printed form, contained this clause under "The Conditions of Sale":

> "10. Any complaints, differences, controversies or questions which may arise with respect to this contract or the breach thereof shall be referred to arbitration at Boston to an individual or body mutually agreed upon by both parties. In case of difference of opinion as to who the arbitrator(s) shall be, the buyer and the seller shall each specify one, and a third shall be the choice of the other two. This agreement shall be enforceable, and judgment upon any award rendered by all or a majority of the arbitrators may be entered, in any court having jurisdiction."

On January 26, 1951, General Ceiling Price Regulation (16 Fed.Reg. 808; CCH, General Ceiling Price Regulations par. 45051, p. 48051) was issued by the Office of Price Stabilization pursuant to the Defense Production Act, 50 Appendix U.S.C.A. § 2061, et seq., prohibiting sales of commodities, including fine top, at a price higher than that which it charged during the base period of December 19, 1950 to January 25, 1951. Shortly after the contract was entered into (on January 30th, according to respondents) some 20,000 lb. were delivered to the Rhode Island mill of respondents' contractor and returned and accepted by petitioner, because of improper grade, according to respondents. Demand for shipment made by respondents in February was refused by petitioner.

On May 9, 1951, the Office of Price Stabilization issued Ceiling Price Regulation 35 fixing precise ceilings for wool products and for the fine top involved in this case at $4.13 per lb. On May 11th, 14,894 lb. were shipped to respondents' contractor on an invoice referring to the original contract and at the price specified in that contract of $4.10 per lb. Respondents paid for this shipment on May 15, 1951. There is a dispute between the parties as to whether this shipment was pursuant to the original contract or as a favor to one of petitioner's salesmen, now deceased, who allegedly represented to respondents that this contract had been terminated. In any event, the market price of fine top fell below that fixed in the contract. Respondents gave no further shipping instructions. Upon failure of efforts to submit the controversy to arbitration, this petition was brought. Two questions are presented: (I) Whether this court has jurisdiction, in the sense that the contract evidenced a transaction in interstate commerce; and (II) Whether the disputed issues of fact and law involved in this case are lawfully subject to an order to compel arbitration under a contract to arbitrate.

## I

Under the Federal Arbitration Act, 9 U.S.C.A. § 2, written arbitration provisions are made enforceable when included in any maritime transaction "or a con-

tract evidencing a transaction involving commerce"—"commerce" being defined elsewhere in the Act as interstate or foreign commerce, 9 U.S.C.A. § 1. Respondents contend that the instant contract does not evidence "a transaction involving [interstate] commerce", because on the two occasions when fine wool top was shipped by petitioner, shipment was made from petitioner's combing plant in Rhode Island to respondents' contractor in the same state. But shipment of commodities is not the only "transaction involving commerce". "Interstate communication of a business nature, whatever the means of such communication, is interstate commerce regulable by Congress under the Constitution." Associated Press v. National Labor Relations Board, 301 U.S. 103 at pages 128–129, 57 S.Ct. 650, at page 654, 81 L.Ed. 953. "(W)e cannot doubt that intercourse or communication between persons in different states, by means of correspondence through the mails, is commerce among the states within the meaning of the Constitution, * * *." International Text-Book Co. v. Pigg, 217 U.S. 91 at page 107, 30 S.Ct. 481, 485, 54 L.Ed. 678. See also United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, at page 541, 64 S. Ct. 1162, 88 L.Ed. 1440; Electric Bond & Share Co. v. Securities & Exchange Commission, 303 U.S. 419 at page 432–433, 58 S.Ct. 678, 82 L.Ed. 936.

█ The instant contract evidences a transaction between persons in different states. It recites that petitioner of "Woonsocket, R. I." has "Sold to" respondents of "96 Spring St., New York, New York." Under "The Conditions of Sale," the contract contains printed statements that the buyer is "to issue shipping instructions" and that "shipments shall be F.O.B. combing plant or ex warehouse." Petitioner's combing plants and warehouses are in Rhode Island and Massachusetts and respondents' only place of business is in New York. Thus the issuance of instructions in New York for shipment from Rhode Island even to a point within Rhode Island should be sufficient to constitute a "transaction involving [interstate] commerce". See Shanferoke Coal & Supply Corp. v. West-

chester Service Corp., 2 Cir., 70 F.2d 297, affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L. Ed. 583. In the instant case, such instructions were in fact issued. In addition, the contract contains the direction, "Please sign and return to [petitioner] Woonsocket, R. I.", which in fact was done by respondents. And provisions in the contract for payment for goods, were effectuated across state lines with respect to the shipment in May, although there is dispute as to whether this shipment occurred pursuant to the original contract. Under these circumstances it is abundantly clear that this contract was one "evidencing a transaction involving commerce" between the states, and consequently that this controversy is within the legislative jurisdiction of the United States. The requisite allegations having been made for judicial jurisdiction, this court has power to dispose of this cause.

## II

Respondents urge several reasons for this court not to compel arbitration pursuant to the contract, most significant of them that the contract was illegal and unenforceable by virtue of the General Ceiling Price Regulation of the Office of Price Stabilization issued on January 26, 1951 (16 Fed.Reg. 808; CCH, General Ceiling Price Regulations of 45051, p. 48051). There is no dispute that the contract was a bilateral one for the sale of goods, and for the arbitration of "any complaints, differences, controversies or questions which may arise with respect to this contract." There is no dispute as to the existence of the contract or its validity, legality, enforceability and freedom from fraud at the time of its making. The only question is the effect of the subsequent General Ceiling Price Regulation on the enforceability of the agreement to arbitrate.

The Price Regulation provided in part (CCH, supra par. 45051, p. 48051):

"Sec. 2. (c) *Prohibitions.* After the date of this order, regardless of any contract or other obligation, you shall not sell, and you shall not buy in the regular course of business or trade, any commodity or service at a price

exceeding the ceiling price established by this regulation."

It should be pointed out that this order does not *in haec verba* invalidate all provisions of existing contracts for the sale of any commodity at a price exceeding the ceiling price established. Indeed when read *in pari materia* with the subsequent, more specific regulation of May 9th, the effect of this order on the contract in question might well have been no more than temporary suspension of performance by petitioner at the stipulated price. The order of January 26th stated:

"It is, therefore, the intention of the Director of Price Stabilization to issue, as soon as practicable and after appropriate consultation, additional price ceiling regulations, some general in scope, and some tailored to meet the separate problems of individual industries."

And that of May 9th provided:

"The prices fixed in this regulation will allow the delivery of wool under the majority of contracts previously made which it is believed are at prices lower than ceiling prices established in this regulation."

█ █ If then performance by petitioner was temporarily deferred by virtue of the Regulation of January 26th, the matter of respondents' right to rescind the contract because of non-delivery of goods in February by petitioner as well as the question of whether in fact respondents did rescind in view of the delivery accepted on May 11th by respondents, would properly be subject to an order for compulsory arbitration pursuant to contract. "Courts and text writers generally agree that where performance of a contract is rendered temporarily impossible by an act of the sovereign the result on the obligation of the parties depends upon whether performance after the delay caused by the act of the sovereign would be substantially different from that contracted for." Pacific Trading Co. v. Mouton Rice Milling Co., 8 Cir., 184 F.2d 141, 148. See also Patch v. Solar Corp., 7 Cir., 149 F.2d 558; 6 Williston on Contracts, § 1957, p. 5490. And the

question of the effect of temporary impossibility on the obligations of the parties is one subject to compulsory arbitration.— In Heyman v. Darwins, Ltd. [1942] A. C. 346 (H.L.), the House of Lords unanimously held that issues of frustration, repudiation and cancellation were properly ones for compulsory arbitration under appropriate clause in a contract valid in its inception. The Lord Chancellor pointed out, Id., at page 366:

"If the dispute is as to whether the contract which contains the clause has ever been entered into at all, that issue cannot go to arbitration under the clause, for the party who denies he has ever entered into the contract is thereby denying that he has ever joined in the submission. Similarly, if one party to the alleged contract is contending that it is void *ab initio* (because, for example, the making of such a contract is illegal), the arbitration clause cannot operate, for on this view the clause itself also is void. But, in a situation where the parties are at one in asserting that they entered into a binding contract, but a difference has arisen between them as to whether there has been a breach by one side or the other, or as to whether circumstances have arisen which have discharged one or both parties from further performance, such differences should be regarded as differences which have arisen 'in respect of', or 'with regard to' or 'under' the contract, and an arbitration clause which uses these or similar expressions should be construed accordingly."

The Heyman rule has been followed in this circuit. In re Pahlberg Petition, 2 Cir., 131 F.2d 968. The case of Matter of Kramer & Uchitelle, Inc., 288 N.Y. 467, 43 N.E.2d 493, 495, 141 A.L.R. 1497, relying upon an English case, Hirji Mulji v. Cheong Yue S. S. Co. [1926] A.C. 497 which was explicitly disapproved by the Heyman decision, A.C. 356 at page 401, is distinguishable from the instant one. In the Kramer case, the O.P.A. regulation frustrating performance continued in effect at the time application for the order to compel arbitration under the New York

State statute was made. In the instant case, the original regulation had been modified and performance of the purchase and sale provisions made possible under the modified regulation long before application for this order. Again, in the Kramer case, as the New York Court of Appeals observed, "There is no issue of fact raised by the record." In the instant case there are disputed issues of fact which might be resolved by arbitration.

This disposition is sufficiently broad to indicate that the issue of frustration or impossibility of performance as well as those of repudiation by petitioner, waiver of such repudiation by respondents and whether petitioner defaulted in failing to specify its arbitrator, are properly subject to an order to compel arbitration under the clause for arbitration in the instant contract.

Settle order.