**REYNOLDS JAMAICA MINES, Ltd.,**
**Appellant,**

v.

**LA SOCIETE NAVALE CAENNAISE,**
**Appellee.**

**No. 7256.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 15, 1956.

Decided Dec. 17, 1956.

Harry E. McCoy and Charles R. Dal-
ton, Jr., Norfolk, Va. (Seawell, Johnston,
McCoy & Winston, Norfolk, Va., G. B.
Margraf, and W. Tobin Lennon, Rich-
mond, Va., on brief), for appellant.

Braden Vandeventer, Jr., and Barron
F. Black, Norfolk, Va. (Vandeventer,
Black & Meredith, Norfolk, Va., on
brief), for appellee.

Before PARKER, Chief Judge, and
SOPER and FAHY,* Circuit Judges.

* Sitting in the Fourth Circuit by designa-
tion of the Chief Justice.

FAHY, Circuit Judge.

Appellant, Reynolds Jamaica Mines,
Ltd., sometimes referred to herein as
Mines, appeals from an order of the Dis-
trict Court granting summary judgment
against it and dismissing its suit against
La Societe Navale Caennaise, appellee,
sometimes referred to as S. N. C. In its
suit Mines sought damages for failure of
S. N. C. to perform fully its contract
with Mines involving the sale of a ship
by S. N. C. to Carribbean Steamship
Company, S. A., a Panama corporation
which became Mines' assignor. Mines
also asserts that its complaint included a
cause of action based on fraud in the in-
ducement of the contract. The essential
facts are as follows:

On April 26, 1952, Mines, a Delaware
corporation, entered into a contract with
S. N. C., a French corporation, to pur-
chase a ship then named the Astree, now
the Dragon, for a specified sum. The
contract provided that Mines would se-
cure the establishment of a Panama cor-
poration which would take title to the
ship. On May 26, 1952, the parties sign-
ed an addendum to the contract which
designated the Panama corporation so
formed, Carribbean Steamship Company,
as the purchaser, but which provided
that Mines would remain responsible
for proper execution of the contract and
for payment of the purchase price.[1] De-
livery of the ship pursuant to the con-
tract took place on June 29, 1952, when
transfer documents were exchanged and
the Dragon was released to its new own-
er. Prior to delivery Carribbean had
employed a marine survey company to
inspect the ship, and was apparently sat-
isfied with the report received. On that
same date the Dragon left the French
port where it was then located and pro-
ceeded to Jamaica. Some hours after de-
parture her Master notified her owner
that the ship was experiencing excessive
vibration due to some trouble in the high
pressure turbine. This condition per-

1. Mines and Carribbean are both wholly-
owned subsidiaries of the Reynolds Met-
als Company.

sisted. On July 28, 1952, the Dragon was placed in a dock at Mobile, Alabama, its propulsion machinery was removed, and the rotor in the turbine was found to be out of line. Repair work required was considerable. It was finally completed on September 6, 1952, at a cost of nearly thirty thousand dollars. Carribbean notified S. N. C. of the defect on August 8, 1952.

On December 8, 1952, Mines and Carribbean jointly filed their complaint against S. N. C. for breach of contract and for misrepresentations as to the condition of the ship, seeking to recover losses resulting from the defective rotor.[2] Appellee filed a motion to dismiss for lack of jurisdiction on the ground there was no such diversity of citizenship as is required under 28 U.S.C. § 1332 (1952), since one of the joint plaintiffs, Carribbean, and S. N. C., defendant, were both alien corporations. Thereafter Mines filed an amended complaint alleging that Carribbean had assigned to it all claims arising out of the breach of the contract. S. N. C. moved to dismiss the amended complaint on the grounds that Carribbean was an indispensable party and that the assignment was only for the purpose of securing federal jurisdiction and was collusive. On January 27, 1954, the District Court overruled this motion.

S. N. C.'s answer was filed February 17, 1954. This delay was obviously due to the time consumed in disposition of S. N. C.'s two motions to dismiss and by Mines' filing of an amended complaint. The answer as originally filed made no mention of the arbitration clauses in the contract sued upon by Mines, and contained a counterclaim against Mines. On April 13, 1954, however, with leave of court, granted over Mines' objection, S. N. C. filed an amended answer which explicitly omitted the counterclaim[3] and pleaded as a separate defense the provisions of the contract for arbitration. These read in pertinent part as follows:

"All disputes and/or differences which may arise in connection with the fulfillment and/or interpretation hereof, shall be referred to the arbitration in London of a single arbitrator mutually appointed by the Parties.

"If the Parties cannot agree to appoint a single arbitrator, each of them shall appoint his own arbitrator and the arbitrators so appointed shall, in their turn, if necessary, appoint an umpire.

\* \* \* \* \* \*

"The award of the sole arbitrator, arbitrators and/or Umpire shall be final and shall bind the parties hereto, who undertake to consider it as a rule of court.

"The right for each party to request arbitration shall automatically cease within 30 (thirty) calendar days as from and excluding the day of delivery."

Prior to the filing by S. N. C. of this amended answer Mines had filed no responsive pleading to the counterclaim set forth in the original answer of S. N. C.

In dismissing the suit on motion of S. N. C. the District Court concluded, "that there are no material issues of fact in dispute at this stage of the proceedings; that this court is without jurisdiction to determine the merits of the controversy as the action is time-barred under the arbitration clause of the contract between the parties; and that the defendant's motion for summary judgment must be granted." The decree which followed also set forth that the court was without jurisdiction because "the action was time-barred under the arbi-

---

2. The total losses alleged were some $250,-000, including not only cost of repairs but all other losses claimed to result therefrom.

3. In the amended answer appellee said

*inter alia:* "Defendant repeats, reaffirms and realleges all of the allegations contained in its answer to the amended complaint with the exception of those allegations which set up a counterclaim \* \* \*."

tration clause" and "defendant's motion for summary judgment is granted."

Mines challenges the action of the District Court on three grounds:

1. It takes the position that S. N. C. by filing an answer and a counterclaim irrevocably submitted to the jurisdiction of the District Court, waived the defense of arbitration, and could not, over appellant's objection, escape that jurisdiction by filing an amended answer which withdrew the counterclaim, and set up the defense of arbitration. It seeks to support this contention by relying on Merchants Heat and Light Co. v. J. B. Clow and Sons, 204 U.S. 286, 27 S. Ct. 285, 51 L.Ed. 488, which holds that by setting up a counterclaim a defendant becomes a plaintiff and thus invokes and submits to the jurisdiction of the court. The jurisdiction there referred to is that over the person. If the submission to the court's jurisdiction inherent in filing the counterclaim in the case at bar were a submission of S. N. C. to the processes of the court we assume jurisdiction thus obtained could not be unilaterally withdrawn by S. N. C. But here the question more accurately is one of waiver of a defense, or if it is a jurisdictional question it is one with respect to subject matter only, and does not involve jurisdiction over S. N. C. Such a waiver, or submission to jurisdiction, is not irrevocable. Only a very strained application of law would permit us to hold that if a counterclaim is withdrawn, nevertheless, having once been filed no defense inconsistent therewith may validly be interposed, even though, as here, no intervening rights arose by reason of the original filing. Rule 15(c) Fed.R.Civ.P., 28 U.S. C., is applicable. It provides that in situations to which it applies an amended pleading relates back to the date of the original.[4] If, therefore, the amended answer withdrew the counterclaim the pleadings thereafter were to be considered as if the counterclaim had not been filed.

Plaintiff contends, however, that the counterclaim was not validly withdrawn, relying upon Rule 41(c) Fed.R. Civ.P., 18 U.S.C. We think this reliance is misplaced; for this Rule permits a voluntary dismissal of a counterclaim before a responsive pleading is served. In the case at bar the court itself permitted the amended answer, without the counterclaim, to be filed. This was done on S. N. C.'s motion and before Mines had filed a responsive pleading to the answer or counterclaim. Surely such a withdrawal is no less effective and no less valid than a voluntary dismissal without court order.[5]

Appellant's reliance on Radiator Specialty Co. v. Cannon Mills, 4 Cir., 97 F.2d 318, 117 A.L.R. 299, for the proposition that the filing of the counterclaim by S. N. C. waived its defense of arbitration is also misplaced. That case involved the waiver of the right to arbitration and to a stay of court proceedings pending arbitration. Here S. N. C. was not seeking arbitration. It was defending on the ground that arbitration was the sole remedy which Mines had available to it for adjustment of this controversy, and not having availed itself thereof within the time specified in the contract it could not seek relief from the court. Such a defense, as any other, is not waived if properly raised during the pleading stage of the case, as was here done by S. N. C. Furthermore, the waiver in Radiator Specialty was not due solely to the filing of a counterclaim. It was due to a dilatory course of conduct,

---

4. "(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Rule 15(c) Fed.R.Civ.P., 28 U.S.C.A.

5. For this reason we need not decide whether the order of the court granting defendant leave to file the amended answer constituted substantial compliance with an alternative method of dismissing a counterclaim under the Rule, namely, dismissal upon order of the court.

including the filing of a counterclaim which was not withdrawn. The full circumstances made it unfair to deny plaintiff access to the court, upon which he had been led by the defendant to rely rather than to seek relief in arbitration.[6] In this case S. N. C.'s delay cannot be said to have resulted in such a waiver, because Mines was not prevented from having resorted to arbitration, nor otherwise unduly burdened, by any delay attributable to S. N. C.

As we have seen, the claim of Mines that the arbitration provisions of the contract were waived rests upon the filing of an answer and counterclaim by S. N. C. Our discussion of this problem thus far has been devoted to the bearing of the counterclaim on this contention. We should add that the filing of an answer by S. N. C. put Mines in no better position. An amended answer was duly filed setting up the arbitration clauses as a defense. This defense cannot be held to have been waived merely because not set forth in the first answer filed. The same reasons which give effect to the withdrawal of the counterclaim give effect also to the defense set forth in the amended answer based on the arbitration clauses.

■ 2. Mines contends that the agreement to arbitrate was not covered by section 2 of the Federal Arbitration Act, 61 Stat. 669 (1947), 9 U.S.C. § 2 (1952), which makes such agreements in "a transaction involving commerce * * * valid, irrevocable, and enforceable," and that the law of the forum, Virginia, must be applied. It urges, on the authority of Big Vein Pocahontas Co. v. Browning, 137 Va. 34, 120 S.E. tration agreement may be repudiated at 247, that under Virginia law an arbitration agreement may be repudiated at any time and resort had to the courts. Mines' position that the Arbitration Act is inapplicable is based upon its consideration of the transaction as being between two foreign corporations. Section

1 of the Act defines "commerce" as including "commerce , * * * with foreign nations" and makes no provision for coverage of commerce among foreign nations. This transaction, however, cannot be viewed as one solely between the two foreign corporations, S. N. C. and Carribbean. The original contract of sale was between Mines, an American corporation, and S. N. C. After Carribbean was created, as contemplated by the original contract, to take title to the ship, an addendum was signed which designated it as "purchaser" but Mines remained a party to and continued to be liable under the contract for the payment of the purchase price. It is clear from the nature of the transaction that Carribbean was merely a holder of title for the benefit of Mines and their parent Reynolds Metals. The position that this transaction constitutes "commerce" only between two foreign nations is untenable. A contract made by an American corporation with a foreign one, upon which it remains liable, and of which it is in fact both an essential party and the real beneficiary involves commerce with a foreign country.

■ 3. The only other point raised by Mines on the appeal is that it stated a cause of action based on fraud in the inducement of the contract, which is not controlled by the arbitration provisions. It is true that those provisions, as we have seen, apply only to "disputes and/or differences which may arise in connection with the fulfillment and/or interpretation" of the contract, which hardly includes fraud in inducing the contract. But in the end this does not help Mines. For it retained the ship and has never sought to rescind the contract or to tender the ship to S. N. C. with a demand for return of the purchase price paid. It has stood upon the contract and sued for failure of full compliance by S. N. C. with its obligations thereunder. We agree with District Judge Hoffman in ruling upon this question as follows:

6. See Kulukundis Shipping Co. S./A. v. Amtorg Trading Corp., 2 Cir., 126 F.2d

978; Almacenes Fernandez, S. A. v. Golodetz, 2 Cir., 148 F.2d 625.

694

"* * * Assuming arguendo that there was fraud in the inducement, the purchaser had an election of remedies. 'Mines' could disaffirm the contract, return the property, demand the return of the purchase price, and thus free itself of the arbitration clause. It could retain the property, accept its benefits, affirm the contract, and sue for damages for fraud and deceit, in which event 'Mines' ratifies the contract and is bound by the arbitration agreement. In this country it is generally recognized that an action by way of affirmance of the contract is a bar to the right to rescind. 24 Am.Jur. 'Fraud and Deceit', § 191, p. 9; Cheney v. Dickinson, 7 Cir., 172 F. 109, 28 L.R.A.,N.S., 359; Jordan & Davis v. Annex Corp., 109 Va. 625, 64 S.E. 1050; Wilson v. Hundley, 96 Va. 96, 30 S.E. 492. One who affirms a contract acknowledges that he entered into the same and is bound by all of its provisions."

A final word. The arbitration clauses, which as we have seen were not waived and were properly before the court as a defense, barred the suit when it was filed. Government of Indonesia v. The General San Martin, D.C.S.D.N.Y., 114 F.Supp. 289; River Brand Rice Mills, Inc., v. Latrobe Brewing Co., 305 N.Y. 36, 110 N.E.2d 545. The parties had agreed that all such disputes as to fulfillment of the contract would be submitted to arbitration, and had limited their right to arbitration to a period of thirty days after delivery of the vessel. The difficulties which gave rise to the suit arose well within the thirty-day period. Yet Mines not only did not notify appellee within that time but never at any time sought arbitration. The agreement reasonably construed means that unless a dispute of this character arose within thirty days of delivery, and arbitration was sought within the same time, the parties were to be left where they found themselves. To hold otherwise would be for us to re-write the contract without power to renegotiate its terms.

We think the District Court properly granted appellee's motion for summary judgment and dismissed the complaint. The District Court also stated it lacked jurisdiction, but we think the court's action as a whole should be construed as sustaining as matter of law the defense based on the arbitration provisions of the contract.

Affirmed.