**Matter of the Arbitration between EL HOSS ENGINEERING & TRANS- PORT CO., Ltd., Petitioner,**

and

**AMERICAN INDEPENDENT OIL COM- PANY, Respondent.**

United States District Court
S. D. New York.
May 5, 1960.

Taylor, Scoll & Simon, New York City, David E. Scoll, Kenneth Simon, New York City, of counsel, for petitioner.

Lundgren, Lincoln & McDaniel, New York City, Walter C. Lundgren, New York City, of counsel, for respondent.

FREDERICK van PELT BRYAN, District Judge.

This is a proceeding to compel arbitration pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, and for injunctive relief during the pendency of such arbitration. After a hearing the injunctive relief sought was denied. The question of petitioner's right to compel arbitration remains.

Petitioner, El Hoss Engineering & Transport Co., Ltd. (El Hoss), is a Lebanese corporation with its principal place of business in Beirut, Lebanon. Respondent, American Independent Oil Company (Aminoil), is a Delaware corporation with its principal place of business in New York. The amount in controversy exceeds $10,000. This court, save for the arbitration agreement, would have diversity jurisdiction over the subject matter of a suit arising out of the controversy between the parties under 28 U.S.C. § 1332(a). It may therefore entertain this petition under Section 4 of the Federal Arbitration Act.

Aminoil operates extensive oil producing facilities in Kuwait at the head of the Persian Gulf adjacent to Iraq and Saudi Arabia.

On October 1, 1959, an agreement in writing was signed by El Hoss and Aminoil providing for the sale by Aminoil to El Hoss of a large quantity of automotive and construction equipment, the lease of other similar equipment by El Hoss to Aminoil, the furnishing to Aminoil by El Hoss of the major transportation services required in and about Aminoil's Kuwait oil field operations, and the payment therefor by Aminoil.

The agreement consists of fifty-four typewritten pages and deals in detail with the equipment to be sold to El Hoss by Aminoil, and leased by El Hoss to Aminoil, the transportation services to be performed and the manner in which they are to be carried out. Annexed is

a lengthy "Operating Guide" of some sixty-nine pages detailing "the procedures covering the procurement and utilization of contract transportation and related services."

The agreement contains an arbitration clause reading as follows:

"11. In the event of any disagreement between the parties hereto as to the effectuation of this agreement, or performance thereof, or any part of the agreement, each party undertakes to use its best efforts to resolve said disagreement without submission to arbitration. However, should such solution be impossible, the parties hereto will select a mutually acceptable arbitrator whose decision as to the matters presented to him shall be final. If the parties cannot agree on such an arbitrator, each shall nominate an arbitrator of its choice and these shall in turn select a third, and the decision of a majority of this panel of three shall be final as to all matters submitted. This paragraph shall not effect the rights of the company to terminate this agreement under the provisions of paragraphs three (3) and four (4) of Section One (1)."

The amount to be paid by El Hoss for the equipment to be purchased by it approached one million dollars. The agreement provided that El Hoss was required to furnish a promissory note in favor of Aminoil, guaranteed by an acceptable financial institution, covering unpaid installments of purchase price. El Hoss was also obligated to furnish a performance bond in the sum of $25,000 covering penalties for failure to supply vehicles and equipment in accordance with normal oil field practices. It was further required to provide suitable liability insurance.

The signature page of the agreement reads as follows:

"This agreement consisting of sections one through thirteen inclusive and attachements one through seven inclusive totaling fifty-four pages is signed by authorized agents of the contractor this 1st day of October, 1959.

El Hoss
Witness Claude T. Dinkel, Jr.

and accepted by the Company this 1st day of October, 1959, subject to compliance with the conditions of this agreement as to guarantees or endorsements by third parties in favor of the Company covering the unpaid installments on purchase price, performance bonds and insurance coverage, etc., not later than fourteen (14) days from the date of the acceptance by the Company.

Ken Bodine
American Independent Oil Company
Witness C. E. McCarty"

On or about October 1, 1959, or shortly thereafter, Aminoil turned over to El Hoss the bulk of the equipment which El Hoss was to purchase under the agreement, and El Hoss commenced the performance of the transportation services which it was to furnish. Time for El Hoss to give the guaranteed promissory note, performance bond and liability insurance and to comply with other similar conditions of the agreement, including certain down payments, was successively extended by Aminoil from October 14, 1959, to November 1, 1959, and then to November 20, 1959.

In the meantime, however, disputes had arisen between Aminoil and El Hoss as to the terms and suitability of the promissory notes, performance bond and insurance which El Hoss was prepared to furnish under the contract, and various proposals of El Hoss with respect to these matters were rejected by Aminoil. The relations between the parties deteriorated, although El Hoss continued to perform transportation services until December 15, 1959, which by then had amounted to over $100,000.

On December 13, 1959, negotiations between the parties with respect to the acceptance by Aminoil of tenders of notes, guarantee, performance bond and insurance terminated. On that day Aminoil

advised El Hoss by letter that, effective December 15, 1959, all "negotiations and operations are to cease under the proposed transportation and tariff haul agreement dated October 1, 1959 between American Independent Oil Company and El Hoss Engineering & Transport Company (said agreement never having come into existence)". The letter requested that all Aminoil equipment affected by the agreement be returned immediately. Within the next few days Aminoil repossessed all the vehicles and equipment which had been turned over to El Hoss, with a few exceptions, and commenced to operate with other personnel the transportation services which El Hoss had been performing for it.

On December 14, 1959, El Hoss, through its counsel, advised Aminoil that it desired to proceed with arbitration under the arbitration clause of the agreement, and designated Theodore W. Keel of New York as its arbitrator. Aminoil replied "that arbitration * * * does not apply under the present circumstances, and we, therefore, neither accept nor reject arbitration as suggested in your letter".

The present proceeding was then instituted.

Section 2 of the Federal Arbitration Act (9 U.S.C. § 2) provides that

"A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * *, shall be valid, irrevocable, and enforcible save upon such grounds as exist at law or in equity for the revocation of any contract."

Commerce as defined in Section 1 of the Arbitration Act includes commerce among the several states or with foreign nations. The agreement at bar involving as it does transactions between an American corporation and a foreign corporation, plainly comes within this definition of commerce. Reynolds Jamaica Mines v. La Societe Navale Caennaise, 4 Cir., 239 F.2d 689, 693. See,

also, United States v. Wilson, 7 Cir., 160 F.2d 745, certiorari denied 331 U.S. 860, 67 S.Ct. 1757, 91 L.Ed. 1867, rehearing denied 332 U.S. 787, 68 S.Ct. 37, 92 L. Ed. 370; Omnium Freighting Corp. v. United Steamship Corp., Sup.Ct., 1st Dept., 15 Misc. 2d 800, 185 N.Y.S.2d 857.

Section 4 of the Act provides that where a petition to compel arbitration is filed

"* * * the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. * * *."

Thus, the initial questions before the court are whether there was a valid agreement to arbitrate and whether respondent failed, neglected or refused to perform it. If there be triable issues as to these questions then "the court shall proceed summarily to the trial thereof". If, however, there are no such triable issues and these questions are determined in favor of the petitioner on the undisputed facts, all that remains is to construe the agreement and to determine whether the dispute between the parties falls within its ambit. Robert Lawrence Company v. Devonshire Fabrics, Inc., 2 Cir., 271 F.2d 402, 411.

Here there is no dispute as to the text of the agreement containing the arbitration clause nor as to the fact that both parties signed the agreement on October 1, 1959. There is, however, sharp disagreement as to the rights and obligations, if any, which arose out of such signing.

Aminoil contends that no binding contract between the parties ever came into existence and that thus there is no agreement on its part to arbitrate. It urges that the acceptance of the agreement of October 1, 1959, "subject to compliance with the conditions of this agreement as to guarantees, or endorsements by third parties in favor of the company covering the unpaid installments of purchase

price, performance bonds and insurance coverage, etc., not later than fourteen (14) days from the date of acceptance by the company" was conditional only and that compliance was a condition precedent to the very existence of any contract binding upon it.

Aminoil says that El Hoss never complied with these conditions and that therefore it never became bound by any of the provisions of the agreement, including the agreement to arbitrate. Its position is therefore that on the undisputed facts there is no valid arbitration agreement and that the petition must be denied.

It further says, however, that if the court should determine that it cannot deny the petition on the undisputed facts, a trial is required to determine whether El Hoss ever complied with what Aminoil claims to be the conditions precedent to its obligation to arbitrate.

El Hoss, on the other hand, contends that the undisputed facts show that a valid and binding contract between the parties was made on October 1, 1959, when the agreement was signed, which included the agreement to arbitrate. It asserts that the conditions attached to Aminoil's acceptance on that date were not precedent to the existence of a binding contract but were merely part of the contract entered into. It takes the position that failure to comply with these conditions, if established, could do no more than excuse Aminoil from proceeding with performance of certain of its obligations under the contract and that the question of whether or not Aminoil was so excused is one of the questions to be determined by arbitration under the arbitration clause.

■ It has now been made clear by Robert Lawrence Company v. Devonshire Fabrics, Inc., supra, "that Congress intended by the Arbitration Act to create a new body of federal substantive law affecting the validity and interpretation of arbitration agreements" and that it also intended "to exercise as much of its constitutional power [under the commerce clause] as it could in order to make the

* * * Arbitration Act as widely effective as possible". At page 406.

The court specifically held (at page 409):

"* * * that the Arbitration Act in making agreements to arbitrate 'valid, irrevocable, and enforceable' created national substantive law clearly constitutional under the maritime and commerce powers of the Congress and that the rights thus created are to be adjudicated by the federal courts whenever such courts have subject matter jurisdiction, including diversity cases, just as the federal courts adjudicate controversies affecting other substantive rights when subject matter jurisdiction over the litigation exists. We hold that the body of law thus created is substantive not procedural in character and that it encompasses questions of interpretation and construction as well as questions of validity, revocability and enforceability of arbitration agreements affecting interstate commerce or maritime affairs, since these two types of legal questions are inextricably intertwined."

The Lawrence case was concerned with proceedings under the Federal Arbitration Act with respect to an arbitration clause in a contract made in New York between a Massachusetts corporation and a New York corporation which involved an interstate transaction. The court rejected the argument that New York law should govern the validity and interpretation of the arbitration agreement and proceeded to formulate appropriate principles of federal substantive law for that purpose.

In the case at bar the agreement was not made in one of the United States between citizens of different states and did not deal with interstate but rather with foreign commerce. As far as appears the agreement was made and negotiated in Kuwait between a Lebanese corporation which has no connection with the United States, and a Delaware corporation with its principal place of business

in New York. The agreement was to be performed in Kuwait and in the adjacent neutral zone.

The agreement is silent as to the law which is to govern its validity and interpretation.[1] Neither party has made any contention that the law of Kuwait governs the validity and interpretation of the agreement. Nor has either made any reference directly or indirectly to what the law of Kuwait on these subjects is, if any there be. Both have treated the case throughout on the basis that the law of the forum applies, though the respondent urges that the applicable law of the forum is that of New York and the petitioner says that it is federal law.

■ As I have pointed out, there is nothing before me to show what the applicable Kuwait law might be. If the Kuwait law differed from federal substantive law as applicable under the Lawrence case, a problem might be presented arising from the fact that the contract here involving a peripheral aspect of foreign commerce, was made and to be performed in a foreign country and was between a Lebanese corporation having no connection with the United States and an American corporation doing business in Kuwait. Cf. Home Insurance Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926. But no such question arises in view of the assumption made by both parties that the law of the forum is applicable. Under the circumstances this has the effect of a stipulation between them that the case should be governed by the law of the forum and such stipulation shall be given effect.

■ Parties are permitted to stipulate in the contract itself what law shall be applied in determining its validity and interpretation, at least in cases where that law has some reasonable connection with the issues to be determined. Under such circumstances the court will give effect to the stipulation of the parties as to the applicable law. Such an agreement of the parties furthers an underlying policy to "reduce litigation, [and] * * * relieves courts of problems of resolving ambiguities". Siegelman v. Cunard White Star, Ltd., 2 Cir., 221 F.2d 189, 195; Hal Roach Studios, Inc. v. Film Classics, 2 Cir., 156 F.2d 596; Duskin v. Pennsylvania-Central Airlines Corp., 6 Cir., 167 F.2d 727, 730 (dictum).

■ In the case at bar the parties have chosen the law to be applied after the contract was made, and, indeed, after litigation was commenced. Here the defendant has its principal place of business within the jurisdiction of the forum. Many of the negotiations concerning the controversy between the parties took place here and the petitioner has chosen a New York arbitrator. I see no reason why such an agreement of the parties as to the law to be applied should not be given effect here. In any event, even if I did not treat their assumption as to the applicable law as an agreement between them, the failure of both to raise the question would be effective as a waiver of any rights which either might have to rely on Kuwait law, if such law in fact affects the problem before the court.[2] Petersen v. Chicago, Great Western Ry., 8 Cir., 138 F.2d 304, 149 A.L.R. 755. See, also, Arams v. Arams, 182 Misc. 328, 45 N.Y.S.2d 251; Lennon v. Cohen, 264 Mass. 414, 421–422, 163 N.E. 63; Dona-

1. The provisions in the agreement that the "activities" of the contractor shall be conducted in accordance with the laws and customs of Kuwait, that the contractor shall pay his employees as required by the Kuwait labor law, and that his employees shall obey the rules and regulations of the Kuwait government, in no way relate to such questions. The contractor would doubtless be required to obey such local laws regardless of contract provisions.

2. It may be noted that even were Section 344–a of the New York Civil Practice Act applicable to proceedings to compel arbitration under the Federal Arbitration Act, that section would not require the court to take judicial notice of foreign law. Walton v. Arabian American Oil Co., 2 Cir., 233 F.2d 541; Sonnesen v. Panama Transport Co., 298 N.Y. 262, 82 N.E.2d 569; Greiner v. Freund, 286 App.Div. 996, 144 N.Y.S. 2d 766.

hue v. Dal, Inc., 314 Mass. 460, 463, 50 N.E.2d 207.

This conclusion is not affected by Walton v. Arabian American Oil Co., 2 Cir., 233 F.2d 541. In that case there was no agreement, tacit or otherwise, between the parties as to the applicable law. On the contrary, the defendant took the position that by neglecting to prove what the Saudi Arabian law was the plaintiff had failed to establish an essential element of his claim. The trial court dismissed the complaint for that reason and the Court of Appeals affirmed on the same basis.

Thus, this case is controlled by the law of the forum which under the Lawrence case is federal substantive law.

The first question to be determined is whether by signing the agreement of October 1, 1959, the parties entered into a valid and binding agreement to arbitrate. I hold that they did.

As Judge Medina said in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, 271 F.2d at page 408:

"Whether the bargain evidenced by the contract or agreement is or is not valid cannot differ essentially from the question of whether any other meeting of the minds of the parties will be recognized as having created certain rights."

■ The lengthy agreement entered into on October 1, 1959, imposed mutual and absolute obligations upon the parties. El Hoss agreed, among other things, to furnish transportation services at Aminoil's oil properties, to make payment for the equipment to be sold by it to Aminoil, to lease other equipment to Aminoil, and to supply Aminoil with guarantees or endorsements covering unpaid installments of purchase price, performance bonds and insurance coverage. Aminoil, on the other hand, agreed, among other things, to sell a large amount of equipment to El Hoss, to lease other equipment from El Hoss, and to pay El Hoss for the services which El Hoss was to render at specified rates. Included was an obligation on the part of both parties to submit to arbitration any controversies coming within the arbitration clause. The parties having assumed these obligations, all the indicia of a binding contract were present and such a contract came into being.

Failure of El Hoss to supply the guarantees, performance bond and insurance which it was required to furnish might have the effect of excusing Aminoil from performing certain obligations which it had undertaken under the contract. But the obligations to supply such guarantees, etc., were merely conditions of the contract entered into and the existence of the contract, at least in so far as the obligation to arbitrate is concerned, was not dependent upon performance of these conditions.

■ The arbitration clause here, as in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, was a separable part of the contract. Neither an alleged breach or a repudiation of a contract precludes arbitration under an arbitration clause. Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra; Almacenes Fernandez, S. A. v. Golodetz, 2 Cir., 148 F.2d 625, 161 A.L.R. 1420; In re Pahlberg's Petition, 2 Cir., 131 F.2d 968; Kulukundis Shipping Co., SA v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978. Similarly, illegality of the contract in whole or in part does not operate to nullify an agreement to arbitrate. Wilko v. Swan, 2 Cir., 201 F.2d 439, reversed on other grounds 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168; Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311, certiorari denied 327 U.S. 777, 66 S.Ct. 522, 90 L.Ed. 1005; Petition of Prouvost Lefebvre, D.C.S.D.N.Y., 105 F. Supp. 757. In both of such situations an agreement to arbitrate entered into by the parties as part of the contract remains valid and binding upon them.

The arbitration clause in the case at bar is likewise a separable part of the contract. It is thus of no consequence whether Aminoil might be discharged from other obligations under the contract by failure of El Hoss to comply with conditions it was bound to perform.

Such conditions were not conditions precedent to the existence of the obligation to arbitrate, as Aminoil argues. In essence, this is a contract by which Aminoil agreed to sell equipment to El Hoss for an agreed price and to pay El Hoss for specified services upon conditions with which El Hoss promised to comply. This is a common form of bilateral contract universally recognized as valid and binding. See Corbin on Contracts, § 83; Williston on Contracts (Revised ed. 1936) § 666(A); Restatement of Contracts, § 250; Matter of Uraga Dock Co., Ltd., 6 A.D.2d 443, 179 N.Y.S. 2d 474, affirmed Uraga Dock Co. v. Mediterranean & Oriental S. S. Corp., 6 N.Y.2d 773, 186 N.Y.S.2d 669; See, also Wetzler v. Equi-Flow, Inc., Sup.Ct., 1st Dept., 16 Misc.2d 524, 183 N.Y.S.2d 822; Granger Co. v. Brown-Ketcham Iron Works, 204 N.Y. 218, 97 N.E. 523; Kellam v. McKinstry, 69 N.Y. 264.

The arbitration clause was a part of that contract and a valid and binding separable provision of it. See Matter of Uraga Dock Co., supra; Robert Lawrence Company v. Devonshire Fabrics, supra.

Moreover, the validity of the arbitration agreement is not affected, as Aminoil contends, by the provision that the arbitration clause "shall not effect [sic] the rights of the Company [Aminoil] to terminate this agreement under the provisions of paragraphs three (3) and four (4) of Section One (1)."

Sections 3 and 4 of Section 1 give Aminoil the right to terminate the agreement on ninety days' notice if it determines that El Hoss is unable "to adequately or efficiently execute the terms of this agreement". Aminoil has not purported to act under these clauses and both its conduct and its present position is wholly inconsistent with such a termination on notice.

Having determined that there is a valid agreement for arbitration there remain only the questions of whether there is a bona fide dispute between the parties which comes within the ambit of such agreement and whether Aminoil has failed, neglected or refused to perform it.

There is no doubt that there is a controversy between the parties as to, among other things, the claim of El Hoss that Aminoil has failed and refused to carry out its obligations under the contract or to permit performance by El Hoss in violation of its contractual obligations, and as to the claim of Aminoil that El Hoss has failed to comply with the conditions as to guarantees, performance bond and insurance, and that therefore Aminoil has no obligation to perform.

The arbitration clause provides that "in the event of any disagreement between the parties hereto as to the effectuation of this agreement, or performance thereof, or any part of the agreement," each party in the event of failure to resolve such disagreement shall select an arbitrator and proceed in due course to arbitration.

The controversy here plainly arises from disagreement as to the effectuation or performance of all or part of the agreement and falls directly within the ambit of the arbitration clause. It is immaterial whether Aminoil claims to have rescinded the contract and that El Hoss disputes this claim as well as Aminoil's right to rescind. See Robert Lawrence Company v. Devonshire Fabrics, Inc., supra, 271 F.2d at page 411. Indeed, it would be a distortion of the plain intention of the parties to hold that the existence of the arbitration clause is dependent upon the answers to the very questions which they contemplated would be determined by the arbitrators.

This is not a case such as Kulukundis Shipping Co., SA v. Amtorg Trading Corp., supra, 126 F.2d 978, on which respondent places much reliance, where there was a question of fact as to whether the defendant had ever agreed to anything at all. Indeed, the controversy here is perhaps more clearly within the ambit of the arbitration clause than in the Lawrence case where the defendant claimed the right to rescind because of fraud in the inducement. Even under the more restrictive policy with respect to.

arbitration laid down in the New York cases the present controversy would be arbitrable. See Matter of Uraga Dock Co. (Mediterranean S.S. Co.) 6 A.D.2d 443, 179 N.Y.S.2d 474, supra; Wetzler v. Equi-Flow, Inc., supra.

There is no doubt that Aminoil has failed, neglected or refused to proceed with arbitration. Its letter of December 14, 1959, stating that arbitration did not apply and refusing to accept or reject arbitration requested by El Hoss, makes that plain.

The respondent will therefore be directed to proceed with arbitration in the manner provided in the arbitration clause in the agreement between the parties of October 1, 1959. The order to be entered will provide that respondent shall, within fifteen days, either accept the arbitrator nominated by the petitioner or nominate an arbitrator of its choice as such clause requires.

Settle order on notice.