AL-SALAMAH ARABIAN AGENCIES COMPANY, LTD., and Alexander & Alexander Middle East, Ltd., Plaintiffs,

v.

Bob F. REECE, Defendant.

No. C-87-297-WS.

United States District Court, M.D. North Carolina, Winston-Salem Division.

Nov. 17, 1987.

C. Thomas Ross and Sarah Katherine Kelly, Winston–Salem, N.C., for plaintiffs.

Fred R. Harwell, Jr. and Robert A. Lauver, Winston–Salem, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court upon defendant's motion to stay pending arbitration pursuant to 9 U.S.C. § 3 (1970). The parties have fully briefed the issue, and the matter is now ready for a ruling. Because of the broad interpretation courts have given the Arbitration Act, 9 U.S.C. § 1 *et seq.*, the court grants defendant's motion.

### Facts

Defendant and plaintiff Al–Salamah Arabian Agencies Company, Ltd. (ASAAL) entered into a written Marketing Services Agreement (agreement) in the City of Riyadh, Saudi Arabia. The agreement, which was prepared by ASAAL, states that all disputes arising under the contract "shall be referred to arbitration in Riyadh in accordance with the Saudi Arabian Arbitration Regulations." Although dated May 1, 1985, the defendant did not actually sign the agreement until September 1985. However, the parties acted pursuant to the agreement after May 1, 1985.

Pursuant to the agreement, the defendant sold and renewed insurance policies to businesses in Saudi Arabia on behalf of ASAAL. Plaintiff Al–Salamah Arabian Agencies Company, Ltd. gave defendant $10,000 monthly advances pursuant to the agreement against which defendant's commissions and expenses were to be deducted. The remainder was to be returned to ASAAL. In October 1985, defendant informed ASAAL that he was returning to the United States. At the time of his departure, ASAAL alleges that defendant owed an outstanding balance to it from the advances he had received since May 1985. It also alleges that defendant breached his contract since he did not return to Saudi Arabia in January 1986 as promised to continue his services as insurance salesman. The plaintiffs filed this complaint against the defendant for monies owed on May 12, 1987. Defendant filed his motion to stay on July 8, 1987.

### Discussion

■ As a preliminary matter, the court addresses plaintiffs' argument that the agreement's arbitration clause is invalid since the defendant fraudulently induced the ASAAL into including an arbitration clause. It is proper for the court to ad-

dress allegations that the arbitration clause itself, standing apart from the overall agreement, was induced by fraud. *See Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442 (S.D.N.Y.1985). In this case, the court finds the plaintiffs' fraud defense to be without merit. Plaintiffs argue that defendant knew when he negotiated the contract that he intended to leave Saudi Arabia; hence, he had no intention to arbitrate disputes arising under the contract in that country. The court finds this speculative evidence insufficient to support an allegation of fraud.

■ The court now addresses the merits of defendant's motion. The plaintiffs argue that the court lacks jurisdiction under the Arbitration Act, 9 U.S.C. § 1 *et seq.*, which covers contracts involving interstate and foreign commerce. Plaintiffs argue that a contract signed and to be performed in a foreign country does not involve "foreign commerce" covered by the Act.

Courts interpret the Arbitration Act broadly to encourage arbitration and to relieve congestion in the courts. *See Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir.1977). In view of that policy, the Fourth Circuit Court of Appeals has ruled that any "contract made by an American corporation with a foreign one, upon which it remains liable, and of which it is in fact both an essential party and the real beneficiary involves commerce with a foreign country." *Reynolds Jamaica Mines v. La Societe Navale Caennaise*, 239 F.2d 689, 693 (4th Cir.1956). A later district court opinion interpreted the *Reynolds'* definition of foreign commerce to include contracts between American and foreign corporations that are negotiated in a foreign country and are to be performed in that country. *See El Hoss Engineering and Transportation Co. v. American Independent Oil Co.*, 183 F.Supp. 394 (S.D.N.Y.1960), *rev'd on other grounds*, 289 F.2d 346 (2d Cir.1961). Based on this precedent, the court concludes that the contract in this action is covered by the Arbitration Act.

■ Plaintiffs next argue that their claim is outside the scope of the written

contract, since the damages occurred before the defendant signed the contract. Plaintiffs' contention rests on the fact that since defendant did not sign the contract until September 1985, all actions prior to this actual signing of the contract were based on an oral agreement which is not subject to the Arbitration Act. Although the defendant did not sign the contract until September 1985, the parties operated under its terms beginning in May 1985. Plaintiff Al–Salamah Arabian Agencies, Ltd., for instance, gave the defendant $10,-000 per month cash advances as required under the contract. These advances continued until November 1985, which was after the contract was signed. Also, although plaintiffs are unhappy with his performance, there is no indication that defendant did not act as an insurance salesman as required by the contract between May 1985 and November 1985.

The parties have not briefed the court on the issue of whether an unsigned written contract may be binding under Saudi Arabian law. However, given the policy of the Arbitration Act in favor of arbitration, the court will assume that the contract is binding. Courts have held that where subsequent conduct of parties manifests an intent to adhere to a written contract, the contract will be enforced despite the absence of signatures. *See, e.g., Allen v. National Video, Inc.*, 610 F.Supp. 612 (S.D.N.Y.1985); *In re Gaynes*, 27 B.R. 161 (9th Cir.1983). Hence, since both parties performed pursuant to the terms of the contract prior to defendant's signing it, the court finds that defendant's claim is based on a written contract subject to the Arbitration Act.

■ Next, plaintiffs argue that defendant waived his right to arbitration. This contention is based on the fact that defendant, prior to the filing of this claim, stated that he did not plan to pursue legal action and that he would not consider plaintiffs' request for payment. The court finds wholly without merit plaintiffs' claim that defendant waived his right to arbitration before plaintiff even brought this claim. Defendant's statements only reflected his

intentions with regard to his own possible legal claims; they do not suggest what defendant intended to do if the plaintiffs filed a claim. In the cases reviewed, a waiver defense similar to the plaintiffs' has been upheld only when the movant for arbitration actually participated in a lawsuit in a manner inconsistent with the right to arbitrate such that it would be prejudicial to the claimant to then stay the action. *See, e.g., Finkle and Ross v. A.G. Becker Paribas, Inc.,* 622 F.Supp. 1505 (S.D.N.Y. 1985). A waiver is not lightly inferred in arbitration cases. *See Hart v. Orion Insurance Co.,* 453 F.2d 1358 (10th Cir.1971). Given the evidence, the court refuses to infer a waiver in this case.

■ Finally, the plaintiffs contend that Saudi Arabia would be an inconvenient forum. In support of this contention, the plaintiffs offered the affidavit of Dr. Mujahid M. Al–Sawwaf, who stated that the defendant probably would not be able to enter Saudi Arabia or, if he could, would not be able to stay long enough to arbitrate this claim. Affidavit of Dr. Mujahid M. Al–Sawwaf at 1. Dr. Al–Sawwaf's affidavit states:

I confirm that for Saudi Arabia no tourist visas are granted. Only three types of visas are recognized—business visas (of relatively short duration such as one week, two weeks or a month), visas for religious pilgrimages (for Muslims only) and resident's visas valid for individuals who have secured employment in Saudi Arabia. I understand that Mr. Robert Reece is not a Muslim and is not currently employed in Saudi Arabia. Hence, if he were to come to Saudi Arabia for an arbitration, he would have to obtain a business visa for such purposes. In order to obtain such a visa, he would have to be invited by a Saudi Arabian company or individual who would serve as his sponsor. I have no knowledge of whether Mr. Reece could in fact obtain sponsorship for such purposes. I further confirm that neither Alexander & Alexander Middle East Ltd. nor Al–Salamah Arabian Agencies Co., Plaintiffs in this action, could compel Mr. Reece to attend an arbitration in Saudi Arabia as a Defend-

ant or as a witness with respect to such arbitration due to his lack of presence in the jurisdiction.

*Id.*

Although defendant has not proffered evidence that he could return to Saudi Arabia, the court does not find Saudi Arabia to be an inconvenient forum. The "unreasonableness of situs" cases relied upon by plaintiffs are inapplicable in determining the enforcibility of arbitration clauses. *See Spring Hope Rockwool v. Industrial Clean Air, Inc.,* 504 F.Supp. 1385, 1389 (E.D.N.C.1981) (application of the forum non conveniens doctrine is not authorized under the Arbitration Act). Also, in Arbitration Act cases, the courts have insisted upon "liberal enforcement of arbitration clauses in multinational contexts." *See Sam Reisfeld and Son Import Company v. S.A. Eteco,* 530 F.2d 679 (5th Cir.1976).

In this action, although the forum non conveniens standard is inapplicable, analogous cases applying that doctrine support the court's finding. For instance, in *Shields v. Mi Ryung Construction Co.,* 508 F.Supp. 891 (S.D.N.Y.1981), the court held Saudi Arabia to be the appropriate forum for a lawsuit despite plaintiff's claim that he could not return to that country to pursue his claims and that, even if he could, he would not likely get a visa permitting him to stay long enough to prosecute a lawsuit. The court found the plaintiff's argument untenable for the following reasons:

The court accepts the opinion of defendant's expert that plaintiff will be able to enter Saudi Arabia to institute suit, especially since plaintiff lived there for several years and likely has friends or acquaintances who may be able to help. Moreover, he need only be there to commence suit and appear at trial. The Court also recognizes that Saudi Arabia, because of its position as a center of international commerce, is a cosmopolitan nation with large numbers of foreigners entering the country at all times. Thus, plaintiff's contention that that country is a provincial backwater with

respect to visa requirements is unpersuasive.

*Id.* at 896.

In light of *Shields*, the court will stay this action until the parties arbitrate this matter or until the defendant has unsuccessfully attempted to reenter Saudi Arabia to arbitrate this matter. If, as plaintiffs argue, the defendant is unable or refuses to return to Saudi Arabia to arbitrate this claim, the plaintiffs may later move to restore this action in this court. *See Shields*, 508 F.Supp. at 897.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for a stay of proceedings is GRANTED, and IT IS FURTHER ORDERED that all proceedings on the claims in this litigation are stayed until completion of the arbitration proceedings or until defendant has unsuccessfully attempted to return to Saudi Arabia to arbitrate this matter.