**Steven SHIELDS, Plaintiff,**

v.

**MI RYUNG CONSTRUCTION COMPANY, Suwaiket-Miryung Construction Co., Ltd., Bechtel International Incorporated and Bechtel-Arabia, Ltd., Defendants.**

No. 79 Civ. 6128 (JMC).

United States District Court,
S. D. New York.

Feb. 24, 1981.

---

Stults, Marshall & Gabler, New York City (S. Pitkin Marshall, Kathryn Gabler, New York City, of counsel), for plaintiff.

Coudert Brothers, New York City (Mark D. Lebow, Jerry L. Siegel, Lynne M. Barry, New York City, of counsel), for defendant Miryung Const. Co.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Motion by defendant Miryung Construction Co.[1] to dismiss the complaint on the ground of forum non conveniens is granted on the conditions stated in this Memorandum and Order.[2]

### FACTS

Plaintiff, a resident of Arizona, brings this diversity action for breach of contract, breach of fiduciary duty and fraud against Miryung Construction Co. ["Miryung"], a South Korean corporation doing business in Saudi Arabia and New York, Suwaiket-Miryung Construction Co., Ltd. ["Suwaiket-Miryung"] and Bechtel-Arabia Ltd. ["Bechtel-Arabia"], both Saudi Arabian corporations, and Bechtel International Inc. ["Bechtel"], a Delaware corporation doing business in Saudi Arabia. Plaintiff alleges that Miryung was interested in bidding on certain government-sponsored construction

---

1. In the complaint, plaintiff apparently incorrectly named this defendant as Mi Ryung Construction Company.

2. Since the Court is conditionally dismissing this action on the ground of forum non conveniens, it is not necessary to reach the alternate grounds for dismissal urged by defendant Miryung, namely, improper venue, Fed.R.Civ.P. 12(b)(3), and failure to join an indispensable party, Fed.R.Civ.P. 19.

projects at Riyadh International Airport in the Kingdom of Saudi Arabia, and that to become qualified to make such a bid under Saudi law, Miryung formed a joint venture with A.M. Al Suwaiket, a citizen and resident of Saudi Arabia. The joint venture, in which plaintiff apparently had no ownership interest, was incorporated as Suwaiket-Miryung on April 2, 1978. Bechtel and Bechtel-Arabia served as construction managers at Riyadh Airport and in that capacity solicited bids and awarded construction contracts on behalf of the Government.

Plaintiff, who lived and worked in Saudi Arabia from 1973 to 1979, was an employee of and joint venturer with Mr. Al Suwaiket during his last two years there. Plaintiff claims to have used his personal contacts and specialized knowledge of Saudi bidding practices to secure for Suwaiket-Miryung the opportunity to bid on projects at the airport. He further alleges that, pursuant to an agreement entered into on March 10, 1978 between Miryung and Mr. Al Suwaiket, he had a participatory interest in the profits of Suwaiket-Miryung based on his and Mr. Al Suwaiket's efforts on behalf of the joint venture. The essence of plaintiff's claims for relief is that Miryung conspired with Bechtel, Bechtel-Arabia and a member of the Saudi Arabian royal family, who is not named as a defendant, to circumvent the March 10, 1978 agreement and deprive plaintiff and Mr. Al Suwaiket of compensation earned thereunder. Plaintiff contends that Miryung, which was not qualified to bid, fraudulently used the address of Suwaiket-Miryung to bid on certain projects at the airport. As a result, plaintiff claims that Bechtel and Bechtel-Arabia awarded three construction projects to Miryung, for which compensation was payable under the March 10 agreement, but that Miryung refused to make payment.

The parties do not dispute that all the events at issue took place in Saudi Arabia and that, except for plaintiff, all witnesses, documents and interested persons are located in Saudi Arabia. For that reason, Miryung has moved to dismiss on the ground of forum non conveniens. Plaintiff opposes that motion, essentially because an adequate alternative forum for this lawsuit purportedly does not exist elsewhere.

## DISCUSSION

■ Under the common law doctrine of forum non conveniens, a court may dismiss an action, even though it has jurisdiction and venue is proper, if, in its discretion, the court determines that justice and convenience warrant dismissal. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1946), the Supreme Court set forth the factors a court must consider in deciding whether to invoke the doctrine. These factors require an evaluation of both the private interests of the litigants and the public interest in not burdening the limited judicial resources of a forum that has, at best, a tenuous connection to the controversy. In addition, the doctrine requires that there be an adequate alternative forum for suit, which presents obvious problems when the proposed alternative forum is a foreign country. *Id.* at 506–07, 67 S.Ct. at 842; *Calavo Growers v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980).

■ The private interest factors include: (1) the ease of access to proof; (2) the availability of compulsory process; (3) the costs of obtaining attendance of willing witnesses; (4) the enforceability of a judgment if one is obtained; (5) evidence of an attempt by plaintiff to vex or harass defendant by his choice of forum; and (6) any other practical problems associated with pretrial and trial proceedings. In analyzing the public interest at stake, the court must consider: (1) the local interest in the controversy; (2) the administrative difficulties caused by congestion of local court dockets with foreign lawsuits; (3) the avoidance of unnecessary problems in choice of law and the application of foreign law; and (4) the imposition of jury duty on residents of a jurisdiction having little relation to the controversy. *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 508–09, 67 S.Ct. at 843; *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 64–65 (2d Cir. 1981); *Calavo*

*Growers v. Generali Belgium, supra,* 632 F.2d at 966–68; *Alcoa Steamship Co. v. M/V Nordic Regent,* No. 78–7054, slip op. at 5945, 5953 (2d Cir. Feb. 25, 1980) (en banc), *cert. denied,* —— U.S. ——, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); *Schertenleib v. Traum,* 589 F.2d 1156, 1164–65 (2d Cir. 1978).

The Court recognizes that once the various factors and interests involved have been weighed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum [will not] be disturbed." *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. at 843; *accord, Manu International, S.A. v. Avon Products, Inc., supra,* 641 F.2d at 65. This burden on defendant is increased by the fact that travel and communications are far easier and more convenient in 1981 than they were in 1947 when the Supreme Court decided *Gulf Oil. See id.* Yet, if ever there was a case appropriate for transfer to a more convenient forum, this is it. Although two of the defendant corporations do business or are qualified to do business in this district,[3] their operations here had absolutely nothing to do with the events at issue in this litigation; all such events took place entirely within Saudi Arabia. The agreements at issue were negotiated, executed and performed there. The construction projects involved were to be built there. All of the probable witnesses, except plaintiff, reside in Saudi Arabia, and all of the relevant documents remain there. Thus, if the suit is maintained here, the sources of proof will be substantially inaccessible, defendants will be unable to compel the attendance of unwilling witnesses, and the costs to defendants of transporting willing witnesses will be much higher than plaintiff's costs in travelling to Saudi Arabia. In addition, Saudi Arabia possesses a sophisticated legal system capable of enforcing a judgment if one is obtained. Indeed, it appears to the Court that plaintiff may be seeking to extract a settlement by making defendants' litigation expenses so high that compromise would be preferable.

With respect to the public interest, initially there is no local interest in the controversy, especially since plaintiff is not a resident of New York. To impose jury duty on the residents of this district would thus be unfair. Moreover, the likely administrative burden on this Court will be great because of the entirely international nature of the litigation, and the choice of law and application of foreign law problems presented by litigation in this Court appear great. Under New York's choice of law rules, which the Court must apply in this diversity case, *see Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Court must choose " 'the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.' " *Loebig v. Larucci,* 572 F.2d 81, 84 (2d Cir. 1978) (quoting *Babcock v. Jackson,* 12 N.Y.2d 473, 481, 240 N.Y.S.2d 743, 749, 191 N.E.2d 279, 283 (1963)). On the facts so far presented to the Court, there is no doubt that the law of Saudi Arabia would apply to all issues in the case. While this would not be an impossible burden for the Court to undertake, it would certainly be difficult. Determining the content of Saudi Arabian law and applying that law to the facts would be far easier at trial in Riyadh. *See Schertenleib v. Traum, supra,* 589 F.2d at 1163 & n.13, 1165. *Farmanfarmaian v. Gulf Oil Corp.,* 437 F.Supp. 910, 924 (S.D.N.Y.1977), *aff'd,* 588 F.2d 880 (2d Cir. 1978).

Thus, the Court finds that the balance of convenience weighs strongly in favor of defendants, and that Saudi Arabia has a superior interest in the litigation, which compels the conclusion that the controversy should be litigated in Saudi Arabia.[4] Nevertheless,

---

3. Miryung, which apparently maintains its headquarters in South Korea, also maintains a six-person office in New York. Bechtel is qualified to do business in New York.

4. Plaintiff advances one additional argument that the Court finds to be frivolous. He contends that it would be unfair for this Court to require an American plaintiff to seek redress of his grievances in a foreign country. Not only has the Second Circuit recently stated explicit-

there remains one important consideration which the Court must address.

■ As stated above, a dismissal on forum non conveniens grounds presupposes the existence and availability of an adequate alternative forum. *See Calavo Growers v. Generali Belgium, supra,* 632 F.2d at 968; *Schertenleib v. Traum, supra,* 589 F.2d at 1160. Plaintiff argues that none exists, relying on his own experience and knowledge of Saudi Arabian legal requirements, *see* Affidavit of Steven Shields (filed Mar. 28, 1980) ["Shields Affidavit"], and on the observations of a Saudi Arabian attorney, *see* Affidavit of Zaki Mustafa (filed May 29, 1980) ["Mustafa Affidavit"]. Defendant Miryung counters with the sworn statement of an American attorney who currently resides and practices law in Saudi Arabia, *see* Affidavit of Adam Fremantle (filed May 6, 1980) ["Fremantle Affidavit"]. When such a dispute among experts arises, the Court may dismiss if it "justifiably believes" that there is an adequate alternative forum, as long as the dismissal is made conditional on defendants' consenting to suit elsewhere and on the transferree court's accepting jurisdiction. *Calavo Growers v. Generali Belgium, supra,* 632 F.2d at 968 n.6; *Schertenleib v. Traum, supra,* 589 F.2d at 1163. Unfortunately, this Court has been unable to find a precise definition in the case law of what constitutes an "adequate alternative forum." It is apparent, however, that some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate. *See Calavo Growers v. Generali Belgium, supra,* 632 F.2d at 968 n.6; *Purser v. American Home Products Corp.,* No. 80 Civ. 710, slip op. at 8 (S.D.N.Y. Jan. 30, 1981).

■ Plaintiff argues that Saudi Arabia is not an adequate alternative forum for the following reasons: (1) that he cannot return to that country to pursue his claims; (2) that he cannot obtain counsel in Saudi Arabia; (3) that his personal safety would be endangered if he pursued litigation in Saudi Arabia involving a dispute with Saudi Arabians, especially since his claims involve allegations of wrongdoing on the part of a member of the royal family; (4) that under Saudi law he would be subject to detainment in Saudi Arabia pending resolution of the controversy; (5) that litigation in Saudi Arabia would be difficult and expensive; and (6) that Saudi courts are rife with corruption and religious prejudice.

The Court accepts as valid only plaintiff's claim that litigation in Saudi Arabia would be difficult and expensive, but finds that this is insufficient to permit the litigation to continue in New York. After all, plaintiff is a resident of Arizona, not New York, which indicates he anticipated this litigation would be somewhat costly and difficult. Moreover, the expense and difficulty defendants would incur if forced to litigate in New York would be far greater than that of plaintiff litigating in Saudi Arabia.

As to plaintiff's other arguments, a foreigner needs an entry visa to enter Saudi Arabia, which requires a letter of invitation from a Saudi citizen. Plaintiff claims that Saudi Arabia will not issue such visas to tourists but only to persons seeking to work or carry on a business. Shields Affidavit, ¶ 8. Defendant's expert contends to the contrary that such visas are regularly given, and that a letter of invitation could easily be obtained from a Saudi attorney retained by plaintiff or from any friend or acquaintance. Fremantle Affidavit, ¶ 3. Plaintiff's expert implicitly concedes that only a visitors visa is required, but contends that it will be difficult for plaintiff to find a sponsor because the sponsor would be financially responsible for plaintiff's misdeeds while there, that Saudi Arabia will

ly that a uniform forum non conveniens standard is to be applied to suits brought by both American and non-American plaintiffs, *see Alcoa Steamship Co. v. M/V Nordic Regent, supra,* slip op. at 5956, 5973, but Saudi Arabia is hardly foreign to this plaintiff. He voluntarily involved himself in that country's construction industry for six years and claims to have specialized knowledge of industry practices and the country itself. The Court does not think it unfair therefore to require plaintiff to accept the risks along with the possible benefits of pursuing business opportunities in a foreign country.

likely not permit the issuance of a visa for the purpose of instigating suit, and that the duration of a visa—no more than three or four months—would be an insufficient time to prosecute a lawsuit. Mustafa Affidavit, ¶ 2. This expert nevertheless concedes that these obstacles are not insurmountable. *Id.* The Court accepts the opinion of defendant's expert that plaintiff will be able to enter Saudi Arabia to institute suit, especially since plaintiff lived there for several years and likely has friends or acquaintances who may be able to help. Moreover, he need only be there to commence suit and appear at trial. The Court also recognizes that Saudi Arabia, because of its position as a center of international commerce, is a cosmopolitan nation with large numbers of foreigners entering the country at all times. Thus, plaintiff's contention that that country is a provincial backwater with respect to visa requirements is unpersuasive.

Plaintiff contends that it would be extremely difficult to retain counsel in Saudi Arabia because no attorney would be willing to represent him in a dispute involving allegations of wrongdoing on the part of the Saudi royal family. Shields Affidavit, ¶¶ 12, 13. His expert's affidavit, however, makes no mention of this problem, and the contention is otherwise unsupported. Furthermore, it is flatly contradicted by defendant's expert. *See* Fremantle Affidavit, ¶ 5. The Court notes that Saudi Arabia has established a specific tribunal for litigation of claims against the Government. *See id.* This indicates that the Saudi royal family is not as sensitive to criticism as plaintiff claims. Moreover, plaintiff is entitled to proceed pro se in any action brought in Saudi Arabia. *Id.*, ¶ 3.[5]

Plaintiff's other assertions that his safety would be endangered if he instituted suit in Saudi Arabia and that official corruption and religious discrimination would prevent him from receiving fair consideration of his claims, are entirely unsubstantiated speculation, *see* Shields Affidavit, ¶¶ 14, 15, 17,

and unsupported by his expert. This Court cannot accept plaintiff's attempt to cast aspersions upon an entire legal system without some supporting evidence. Plaintiff provides none, and defendant's expert denies all such allegations. Fremantle Affidavit, ¶¶ 8, 10. Finally, plaintiff's expressed fear of detainment in Saudi Arabia pending resolution of the dispute is not supported by the sworn statement of his legal expert. Defendant's expert states to the contrary that detainment can only occur if a foreigner holds money that he might remove from the country and which is the subject of a pending dispute, or if it is anticipated that he will leave the country with a substantial sum of money owed to persons within Saudi Arabia. *Id.*, ¶¶ 4, 6. This procedure is similar to the civil arrest provisions of former N.Y. C.P.L.R. Article 61, which was repealed in 1979.

There are two forums in Saudi Arabia available to a foreign plaintiff who wishes to pursue a claim arising from a commercial transaction in Saudi Arabia. The first is the "Committee for the Settlement of Commercial Disputes," composed of two judges and one legal advisor from the Ministry of Commerce, the decisions of which are subject to appellate review. The second forum is the "Arbitration Committee" under the jurisdiction of the Ministry of Commerce. Like arbitration in the United States, this forum is intended to speed the resolution of commercial disputes informally and without great expense. Each party appoints one arbitrator and a third is appointed by the Ministry of Commerce. The decisions of this body are also subject to appellate review. *See* Defendant's Second Reply Memorandum, Exhibit A (filed June 2, 1980) (letter from United States Department of State to counsel for defendant Miryung, dated May 5, 1980); Affidavit of Mark D. Lebow, ¶ 6, Exhibit A (filed May 6, 1980) (portion of an article entitled "Judicial Authority and the Court System of Saudi Ara-

---

**5.** The Court notes further that plaintiff does not contend that he cannot afford counsel. If he should require assistance in retaining counsel, the United States State Department maintains listings of local counsel at consular offices in various locations in Saudi Arabia. *See* Defendant's Second Reply Memorandum, Exhibit A (filed June 2, 1980).

bia," Middle Eastern Executive Report, September 1979).

In light of the foregoing, the Court believes that an adequate alternative forum is available to plaintiff in Saudi Arabia. The action is therefore dismissed on condition that the suit proceed in that country. Plaintiff is assured of an adequate forum, because if defendants refuse to submit to jurisdiction there[6] or the Saudi forum refuses to take jurisdiction, plaintiff may move to restore the action in this Court. *See Calavo Growers v. Generali Belgium, supra,* 632 F.2d at 968; *Schertenleib v. Traum, supra,* 589 F.2d at 1166.

## CONCLUSION

Accordingly, defendant Miryung's motion to dismiss the complaint on the ground of forum non conveniens is granted, conditioned upon the following:

1. that defendants consent to suit and acceptance of process in the Kingdom of Saudi Arabia in any civil action timely filed by plaintiff on his claims;

2. that the appropriate forum in the Kingdom of Saudi Arabia to which such action is transferred accept jurisdiction to hear the case;

3. that defendants agree to waive any statute of limitations defense that may have arisen since the commencement of this action in this Court;

4. that defendants agree to make available, at their own expense, any documents or witnesses within their control that are needed for the fair adjudication of any action brought by plaintiff on his claims in the Kingdom of Saudi Arabia;

5. that defendants consent to pay any judgment or judgments, if any, which may be rendered against them in the Kingdom of Saudi Arabia in any civil action brought by plaintiff on his claims;

6. that defendants advise the Court of their consent to these conditions, and of their efforts to determine whether the appropriate forum of the Kingdom of Saudi

Arabia will accept jurisdiction, within thirty days of the date of this Memorandum and Order.

SO ORDERED.

---

**6.** This is unlikely, since Miryung has stated that it consents to be sued in Saudi Arabia and the other defendants are all either incorporated or doing business there.