**Wayne E. DUHA, Plaintiff,**

v.

**AGRIUM, INC., Agrium US, Inc., and Agroservicios Pampeanos S.A., Defendants.**

**No. 03–CV–10027.**

United States District Court, E.D. Michigan, Northern Division.

Oct. 13, 2004.

Stuart H. Deming, Kalamazoo, MI, for Plaintiff.

Andrew S. Rosenman, Christopher C. Murray, Danuta B. Panich, Mayer, Brown, Chicago, IL, Russell S. Linden, Honigman, Miller, Detroit, MI, for Defendant.

***OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS BASED ON FORUM NON CONVENIENS AND DENYING AS MOOT DEFENDANTS' MOTIONS TO DISMISS ON OTHER GROUNDS***

LAWSON, District Judge.

The plaintiff, an American Citizen and resident of Indiana, has filed a forty-five-

count second amended complaint in this Court alleging various contract and tort theories arising from the termination of his employment by Agroservicios Pampeanos S.A., an Argentine company. The plaintiff has also sued Agroservicios' parent company, Agrium, Inc., a Canadian corporation, and its United States affiliate, Agrium US, Inc. The defendants contend that the plaintiff was terminated because of poor job performance and misconduct during his tenure with Agroservicios in Argentina. They have filed motions to dismiss on various grounds including *forum non conveniens*, which the Court now considers. The *forum non conveniens* motions were filed in May and June 2003, but the plaintiff responded with allegations that he required discovery to properly answer the motions. The Court allowed discovery limited to the issues of venue and personal jurisdiction, and the parties have filed several supplemental papers in support of their respective positions. The Court has reviewed the submissions and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

Based on the information before the Court, it appears that the plaintiff was employed by an Argentine company to perform work in Argentina. A reasonable alternate forum is provided by the Argentine national labor courts through a process that the plaintiff initially invoked in that country, and the public and private interests favor Argentina as the forum for resolution of this dispute. The Court, therefore, will grant the defendants' motions to dismiss on the basis of *forum non conveniens*, deny the remaining motions to dismiss as moot, and conditionally dismiss the second amended complaint without prejudice.

## I. Facts

Agrium, Inc. is a Canadian corporation headquartered in Calgary, Alberta, Canada. It manufactures agricultural products including fertilizers and distributes them throughout North America and South America. Agrium U.S. and Agroservicios Pampeanos S.A. are both wholly-owned subsidiaries. Each subsidiary has its own executive and managerial staff, board of directors, and human resources department. Agroservicios has no offices in the United States; Agrium U.S. has its headquarters in Colorado, and it operates a fertilizer plant in Reese, Michigan.

When the plaintiff was fired, he was on an expatriate assignment working at Agroservicios in Argentina, although the question is disputed whether his employer at the time was Agrium US. He came to be employed by Agrium U.S. through a series of transfers and acquisitions. From April 1980 through March 1993, Mr. Duha was the farm center manager for Agrico Chemical Company in Darien, Wisconsin. During that time, Agrico was acquired by Crop Production Service, Inc. Over time, the plaintiff received promotions and transfers and worked in offices located in Burlington and Janesville, Wisconsin and Cobleskill, New York. From August 1991 through June 1994, the plaintiff was the manager for the Michigan division of Crop Production Service, Inc. and was located in Bay City, Michigan. It was during this period—in 1993—that Crop Production Service, Inc. was acquired by Agrium US. In July 1994, the plaintiff became director of operational projects for Crop Production Service, Inc.

On February 1, 1996, while still located in Bay County, Michigan, the plaintiff was transferred from Crop Production Service, Inc. to the regular staff of Agrium US. From January 1996 through July 1998, the plaintiff served as the marketing services

manager for Agrium International and resided in Bay City, Michigan. During that period, the plaintiff was paid by Agrium U.S. and traveled frequently to Argentina and Brazil.

The plaintiff was recruited by the defendants for a long-term assignment in Argentina, and he accepted that assignment beginning on August 1, 1998. The parties dispute whether the plaintiff was then employed by Agroservicios or Agrium US. The letter extending the offer was authored by Larry Collins, who was an officer at Agrium and Agrium US, and it was printed on the stationery of Agrium International, which is a strategic business unit of Agrium. The plaintiff accepted the agreement in Argentina and lived there in rented quarters. There are documents that suggest that the plaintiff's employment with Agrium was formally terminated when he accepted the expatriate assignment, and the plaintiff acknowledges that he was on Agroservicios' payroll. It also is undisputed that he became a manager at Agroservicios and assisted the defendants in the establishment and operation of retail sales organizations in Argentina. His job entailed setting up farm centers to sell the defendants' products. The assignment was originally intended to last twenty-five months.

The plaintiff was terminated from his employment in Argentina on February 3, 2000. He claims that his termination was unlawful and that he was fired for reporting to the United States Justice Department and the Securities and Exchange Commission his employers' illegal activities under the Foreign Corrupt Practices Act 15 U.S.C. § 78dd, et seq. His employers, however, contend that the plaintiff was discharged only after he offered to hire "the best hooker in Buenos Aires" for one of his coworkers as a "motivational reward" for a job well done, and he notified his superior that a bill for those "services"

would be forwarded to management for payment.

On January 28, 2003, the plaintiff filed his complaint asserting thirty counts against the defendants, which included claims for breach of contract, breach of express covenant of good faith and fair dealing, breach of implied-in-law covenant of good faith and fair dealing, promissory estoppel, wrongful termination under both Michigan and Colorado public policy, tortious interference with contractual relationship, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of employment agreement for benefits and expenses, unjust enrichment, and quantum meruit. On April 28, 2003, the plaintiff filed an amended complaint adding claims against the defendants for breach without just cause of a contract for indefinite term, breach without just cause of a contract for fixed term, innocent misrepresentation, and silent fraud. He expanded on his allegations of fraud in a seconded amended complaint filed on May 10, 2004, which contains forty-five counts.

The defendants timely filed their motions for dismissal based on *forum non conveniens*, the Court conducted a preliminary scheduling conference pursuant to Federal Rule of Civil Procedure 16, and the parties have litigated several discovery motions over questions relating to disclosures under the limited scope of discovery authorized by the Court. The defendants contend that Argentine courts provide a reasonable alternate forum, the activity that forms the core of the disputed questions in this case occurred in Argentina, access in the United States to the sources of proof is limited since non-party Argentine witnesses cannot be compelled by American courts to give evidence, the applicable choice-of-law rules would require the application of Argentine law to resolve

the dispute, and the public interest favors litigating this dispute in a court not located in Michigan.

The plaintiff counters by claiming that his home base under the defendants' expatriate agreement remained in Michigan throughout his residence in Argentina, and his employment agreement remained with either an American or Canadian company. Thus, the dispute in this case focuses on the relationship of an American citizen and his domestic employer over events that allegedly occurred in a foreign country during an expatriate assignment, and the consequences of his separation from employment, including severance benefits, to which he claims entitlement under United States law. The plaintiff observes that the relevant documents are all printed in English and the damage calculations would be in U.S. dollars. The plaintiff offered a list of potential witnesses by attaching to his response his answers to interrogatories identifying 135 persons, with ten located in South America, thirty-eight in Canada, and eighty-three in the United States with a few of those in Michigan. He states that a majority of the Argentine witnesses identified by the defendants are employed by them and many of those have not been interviewed, but since they are friends of his their testimony would not be helpful to the defendants; and the non-party Argentine nationals can give evidence in a United States court through letters rogatory.

## II. Analysis

Motions to dismiss on several different grounds are now pending before the Court. The Court may consider any of these motions in the order it deems most expeditious; it need not resolve the issue of personal jurisdiction or failure to state a claim if the case can be disposed of on grounds of *forum non conveniens. See Kryvicky v. Scandinavian Airlines Sys.,* 807 F.2d 514, 517–18 (6th Cir.1986) (holding that district court properly considered dismissal based on *forum non conveniens* without first determining personal jurisdiction question); *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 290 (5th Cir. 1989) (finding that disposing of case on *forum non conveniens* grounds obviated need to consider subject matter jurisdiction).

■ The defendants' motions based on *forum non conveniens* present the question whether an American employee of an international corporation who is fired while on temporary assignment to a foreign country must litigate his wrongful termination claims in that foreign country when some of the witnesses who may have evidence of the employee's job performance are located there. The plaintiff's choice of forum in such circumstances "should rarely be disturbed" absent a strong showing by a defendant supporting transfer or dismissal. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Nonetheless, dismissal is not "automatically barred" when a plaintiff brings suit in his home forum; rather, the court should give deference to the plaintiff's choice and dismiss only when "the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 n. 23, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Courts have dismissed cases brought by American plaintiffs against domestic defendants over contracts to be performed in foreign countries when the balance of conveniences overcomes the deference due and favors the foreign forum. *See Tisdale v. Shell Oil Co.,* 723 F.Supp. 653 (M.D.Ala.1987) (court dismissed plaintiff's claims, including breach of contract, based on contractual forum selection clause and on *forum non conveniens* where Shell hired Tilsdale, an Alabama resident, to work in Saudi Ara-

bia); *see also Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345 (1st Cir.1992) (court dismissed the plaintiff's claims for breach of contract based on *forum non conveniens* in a dispute between an American citizen and an American corporation over a contract to operate a casino negotiated and executed in Turkey); *Forsythe*, 885 F.2d 285 (5th Cir.1989) (airline pilot brought claim for wrongful discharge against Saudi Air in Texas state court; after removal, federal district court dismissed and Fifth Circuit declined to review the issue of the district court's jurisdiction under the Federal Sovereign Immunities Act, and affirmed the dismissal on grounds of *forum non conveniens*, where court found that termination occurred in Saudi Arabia, witnesses and documents were located there, and Saudi Arabian law would apply because of the employment contract's choice of law provision and choice of forum provisions).

As this Court has previously observed, "[a]n action may be dismissed on the basis of *forum non conveniens* if the defendant demonstrates that (1) there is a reasonable alternative forum available and (2) the balance of private and public interests favors transfer." *Ramakrishna v. Besser Co.*, 172 F.Supp.2d 926, 929 (E.D.Mich.2001) (citing *Stewart v. Dow Chemical Co.*, 865 F.2d 103, 106 (6th Cir.1989)). The defendant bears the burden of persuading the Court on both elements. *Ibid.*

### A. Reasonable Alternate Forum

In assessing whether there is an adequate alternate forum available, the Court must determine if the plaintiff is legally and practically able to bring his claim in the other forum. *Ramakrishna*, 172 F.Supp.2d at 929. An alternate forum is not reasonable if any of the following circumstances exist: (1) the plaintiff would be unable to pursue his or her action; (2) the defendant is not amenable to service of process in the alternate forum; (3) the

laws of the alternate forum do not provide an adequate remedy; or (4) there is major or excessive delay in the alternate forum. *Id.* at 929–930. Once the defendants have provided a reasonable alternate forum, the "plaintiffs have the burden of production to overcome the presumption of adequacy that an alternative forum enjoys." *Id.* at 931 (citing *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir.2001)).

 The defendants contend that there is a reasonable alternate forum for the plaintiff in Argentina. An alternate forum generally exists when the defendant is "amenable to process" in the other jurisdiction. *Piper Aircraft Co.*, 454 U.S. at 254 n. 22, 102 S.Ct. 252 (citing *Gulf Oil Co.*, 330 U.S. at 506–07, 67 S.Ct. 839). In this case, the defendants have agreed to consent to service of process in Argentina upon a *forum non conveniens* dismissal. The willingness of a defendant to consent, coupled with conditioning dismissal upon the fulfillment of that condition, can establish the adequacy of the alternate forum. *See Stewart*, 865 F.2d at 107; *Kryvicky*, 807 F.2d at 516–17. The defendants also have submitted the affidavit of Gustavo Ferrante, an Argentine labor attorney, who avers that the plaintiff would be able to bring a lawsuit similar to the present action against the defendants in the National Labor Courts of Argentina, he would be afforded an adequate remedy in that forum, and the average length of such a lawsuit there from complaint to trial is approximately two and one-half years. *See* Aff. of Gustavo Ferrante at ¶¶ 5, 7–9,12 (stating that the National Labor Courts in Argentina handle disputes arising from complaints based on employment contracts; that the National Labor Court would have jurisdiction over the defendants; that "the average time it takes for a case to obtain a first instance judgment from the Labor Court from the time of

filing is approximately two and a half years;" that he is "not aware of any case or authority that would preclude Mr. Duha from alleging a claim of breach of employment contract (implied or express) in an Argentina Court").

Moreover, it appears that the plaintiff already has resorted to the forum by seeking conciliation, which is a mandatory preliminary procedure leading to litigation. The plaintiff explained that through that process he reached a tentative accord with Agroservicios, but the settlement unraveled when he balked at a condition requiring execution of a release in favor of Agrium and Agrium U.S. as well.

■ Although the plaintiff does not assail the adequacy of the Argentine judicial system to resolve his dispute with his former employer, he does argue that Argentina is an inadequate forum because he has a fear of safety there stemming from a remark by an unknown person overheard by one of his wife's friends (the speaker was unconnected to any defendant), and armed guards once followed him years ago because of unspecified, threatened violence. A plaintiff's fear for his own personal safety, however, does not render a forum inadequate when the fear arises from an unsubstantiated assertion that his safety would be jeopardized by pursuing a claim, especially when the source of the threat is unrelated to the forum's political or legal system. *See Mercier,* 981 F.2d at 1351 n. 2; *see also Shields v. Mi Ryung Constr. Co.,* 508 F.Supp. 891, 896 (S.D.N.Y. 1981) (dismissal not prevented by unsubstantiated assertion that the plaintiff's personal safety would be in jeopardy in Saudi Arabia and that the legal system was corrupt).

The Court believes that the defendants have demonstrated that Argentina is an adequate alternate forum.

### B. Balancing the Private and Public Interests

Once a court finds that there is a reasonable alternate forum available to the plaintiff, it must then "consider the private interests of the litigants and factors of public interest in determining relative convenience of the forum chosen by the plaintiff as opposed to the available alternative forum." *Dowling v. Richardson–Merrell, Inc.,* 727 F.2d 608, 612 (6th Cir.1984) (citing *Gulf Oil Co.,* 330 U.S. at 508–09, 67 S.Ct. 839). The "central focus of the ... inquiry is convenience." *Piper,* 454 U.S. at 249, 102 S.Ct. 252.

#### 1. Private Interests

■ When balancing the relative merits of the alternate forum against the plaintiff's chosen forum, courts generally consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of witnesses; (3) the possible need to view the premises; and (4) all other practical problems that make a trial more convenient and less expensive. *Ramakrishna,* 172 F.Supp.2d at 930 (citing *Gulf Oil Corp.,* 330 U.S. at 508–09, 67 S.Ct. 839; *Kryvicky,* 807 F.2d at 516).

##### a. Relative Ease of Access to Sources of Proof

■ As previously noted, the essence of the plaintiff's wrongful termination claim is that the defendants had engaged in corrupt practices, including receipt of "kickbacks" by senior officials, and that they engaged in a cover-up operation that included terminating the plaintiff, who threatened to expose the wrongdoing. The defendants maintain that the plaintiff was fired for poor performance and misconduct, and the plaintiff, naturally, rejoins that his termination was pretextual.

The defendants state that they are unaware of a single witness or source of proof on these issues located in the State of Michigan. However, they are aware of at least thirty-one witnesses in Argentina that have information related to either the plaintiff's job performance as a manager at Agroservicios or the events giving rise to his termination, and some may have information about both. Through affidavit, the defendants identify the following individuals: Ronaldo Jose Delaney, Agroservicios's former Human Resources Manager, who investigated the plaintiff's offer of an illicit inceptive to Manual Ron, participated in the plaintiff's termination, and investigated the missing items from the home in Argentina provided to the plaintiff by Agroservicios; a former Finance Manager, Walter Darvich, and former Information Technology Manager, Horacio Musante, who both made complaints about the plaintiff to his supervisors; a former Division Manager, Matias Kugler, and two former marketing employees, Luciano Martin and Martin Echeveste, who have information about plaintiff's job performance while employed with Agroservicios; and Carlos Gasparutti, the landlord of the house provided to the plaintiff by Agroservicios, who has information regarding missing appliances and other set-offs to the plaintiff's damages. In addition there are eighteen current or former farm center managers in Argentina that have information about the plaintiff's conduct, including his alleged "rewarding" of managers with sexual acts. The defendants state that the other witnesses that have knowledge of this incident are located in Alberta, Canada, but no relevant witnesses are in Michigan.

Of the 135 witnesses identified by the plaintiff only fifteen of the eighty-three American domiciled individuals are located in Michigan. Of these, the plaintiff states that Bruce W. Crissman has knowledge of Agrium's purchasing of equipment for Agroservicios, the arrangement of field training through the plaintiff's home office in Bay City, Agroservicios's operations in Argentina, the excessive spending associated with those operations, and the plaintiff's efforts in getting Agroservicios up and running; Pat and Deb Dammer have knowledge of the plaintiff's maintenance of his home and home office in Bay City, Michigan; Felicia Drayer, the plaintiff's ex-wife, has knowledge of his employment with Agrium and his maintenance of a telephone and fax machine in his home to purchase equipment and supplies for Agrium and Agroservicios; Lisa Foy, an employee of Independence Bank, who as a former employee of Mutual Savings Bank in Bay City has knowledge of the plaintiff's ongoing trips to Bay City during his time in Argentina; Stacy Hager, the plaintiff's stepdaughter, has knowledge of his employment with Agrium and maintenance of his "home office;" Mel Hahn has knowledge of plaintiff's efforts from his home office to arrange for training of Agroservicios personnel in Michigan; Kip Pavlawk has knowledge of the plaintiff's efforts from his home office in Bay City to arrange travel and training of Agroservicios staff in Michigan; Amy Restum has information regarding the plaintiff's employment benefits; Ron Restum, an Agrium U.S. employee, may have heard that the plaintiff was terminated for putting "prostitutes on the expense reports" and has knowledge of the plaintiff's efforts from his home office to train Agroservicios employees in Michigan; Don Rose, an employee at Hagen Ford, knew that the plaintiff purchased four trucks from him on behalf of Agrium and Agroservicios; Fran Sampson typed documents for the plaintiff while he worked in Bay City with her invoices being paid by Agrium; Ed Sowa, an Agrium U.S. employee, has knowledge of Agrium's operations in Argentina as well as the plaintiff's employment with Agrium International through his offices in Bay City;

Rick Terbesh, an employee of Steven Van Lines, has information about the representations made to the plaintiff by Agrium regarding his move in 1998; and Jeanine Wells has information about the stress that the plaintiff was having due to the "situation" in Argentina.

Nearly all of the witnesses named by the plaintiff who are located in this jurisdiction have information limited to the plaintiff's maintenance of a "home office" in Bay City, Michigan during his expatriation. These are jurisdictional facts, but they do not relate to the substantive issues of his job performance, subsequent termination, or the defendants' alleged misconduct. None of them has direct knowledge of the actual disputed events. The plaintiff does acknowledge that other witnesses located in Argentina have such information, but he claims that those individuals likely would testify in his favor and against the defendants. Nonetheless, the defendants contend that they would rely on the testimony of those witnesses, as outlined earlier. The defendants' analysis of the plaintiff's discovery responses yielded a concession that a United States domiciled witness, Adrian Fuller, may have relevant information, but he now resides in Oklahoma. Fuller apparently negotiated some terms of the plaintiff's expatriate contract with the defendants when Fuller was working in Argentina. But the defendants note that Fuller did not author or sign any document that the plaintiff claims gave rise to a contract; nor can he comment on the plaintiff's job performance in Argentina or any circumstances related to the plaintiff's discharge because Fuller was terminated in 1998 before the plaintiff began his expatriation.

The plaintiff also states that two other employees, Richard Gearhead and John Yokley, allegedly expressed reservations about his termination. Gearhead is located in Colorado and Yokley is located in Alberta, Canada. Both are employed by the defendants and presumably can be produced at any location to give evidence in the matters.

After reviewing the parties' submissions, the Court is convinced that the majority of witnesses who have core information about the plaintiff's employment, performance, and termination are located in the alternate forum and could be contacted and summoned most easily there.

### b. Availability of Compulsory Process for Attendance of Witnesses

■ Unlike an Argentine court, this Court will be unable to compel the attendance of any of the foreign non-party witnesses in this case for either trial or deposition testimony, which the defendants state will severely prejudice their ability to defend because several of these witnesses are "central" to their defense. Although the testimony of the non-party witnesses may not be necessary to defend against all of the plaintiff's claims, the testimony of these witnesses appears to be necessary to the defense of the claims of wrongful termination of plaintiff in violation of public policy and the assertion of their just cause defense. The Supreme Court in *Gulf Oil* stated that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp.*, 330 U.S. at 511, 67 S.Ct. 839.

According to Mr. Ferrante's affidavit, under conf. Section 89, Law 18,345, an Argentine court can compel appearance of all non-party witnesses residing in Argentina. The plaintiff questions whether any non-party witnesses located in Argentina will assist the defendants in their defense of the plaintiff's claim since they are close friends of his, they likely would not retain records relative to frequenting brothels,

and the defendants have yet to contact any of these witnesses. Further, the plaintiff claims that even if these non-party witnesses have relevant information they can be compelled to testify through the use of letters rogatory. However, of all the private interest factors, the relative ability of the forums to compel the attendance of significant unwilling witnesses at trial often is considered the most important factor, because the inability to present live testimony may result in an unfair trial and unfairness to the defendants. *See Mercier,* 981 F.2d at 1355–56 (observing that the fact that only the foreign forum could compel live testimony of crucial witnesses weighed heavily in favor of dismissal because deposition testimony and letters rogatory were not satisfactory substitutes because they would not allow the United States fact finder to evaluate the witnesses' credibility); *see also Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 836 n. 11 (5th Cir.1993). Despite this preference for live testimony, some courts have recognized the availability of letters rogatory when deciding if the plaintiff's chosen forum is truly inconvenient. *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 30 (2d Cir.2002) (en banc). Under appropriate circumstances, videotaped depositions, obtained through letters rogatory, may afford the jury with the opportunity to assess the credibility of foreign witnesses while preserving the plaintiff's chosen forum. *Ibid.* However, when this type of accommodation is required for several witnesses as opposed to one or two, the balance tips in favor of dismissal on grounds of *forum non conveniens. Ibid.*

The majority of relevant witnesses with knowledge of the plaintiff's job performance and termination, including those whom the plaintiff may need to call in support of his own claims, appear to be in Argentina. Accordingly, the use of letters rogatory in this case will be cumbersome, costly, and should be avoided because of the potential for serious prejudice to the defendants. This important factor weighs heavily in favor of dismissal.

### c. Other Problems That Make Trial Less Convenient and More Expensive

#### i. Document Discovery Would Be Impeded

Argentina has filed a Declaration under Article 23 of the Hague Convention that the "Argentine Republic will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law Countries." Convention adopted at the Eleventh Session of the Hague Conference on Private International Law, Oct. 26, 1968, art. 23, 23 U.S.T. 2555. Therefore, if the case remains in Michigan, this method of document discovery will be unavailable to the defendants in this case. However, most of the relevant documents are in the possession of the defendants; consequently this factor does not weigh heavily in favor of dismissal.

#### ii. Plaintiff is Familiar With Argentina's Legal System

The defendants argue that the plaintiff is familiar with the alternate forum, fluent in the Spanish language, and he previously filed a lawsuit in Argentina against Agroservicios. These facts, defendants claim, should favor dismissal. *See Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 13 (1st Cir.2000) (stating that a plaintiff's "familiarity with the alternative forum, her comfort level there, and her fluency in the language used in its courts may be weighed in deciding a *forum non convenience* [sic] motion."). The plaintiff does not dispute these facts, and the Court believes that they weigh slightly in favor of dismissal.

### iii. Relative Size and Resources of the Parties

The plaintiff argues that the relative size and resources of the parties ought to be a consideration in assessing the inconvenience to the parties. He relies on *Steelcase v. Mar–Mol Co., Inc.,* 210 F.Supp.2d 920 (W.D.Mich.2002), which is a case that analyzes the relevant factors in a transfer to another district under 28 U.S.C. § 1404(a). Those factors and analysis are inapplicable here, where the defendants' motion to dismiss is based on *forum non conveniens* grounds. *See Piper Aircraft Co.,* 454 U.S. at 253, 102 S.Ct. 252 (stating that "the employed reasoning in *Van Dusen v. Barrack* is inapplicable to dismissals on grounds of *forum non conveniens* " because that case focused on the construction and application of § 1404(a) and not the common-law doctrine of *forum non conveniens* ). Nonetheless, the Court may consider this factor in fashioning equitable conditions for dismissal.

### iv. Hardship to the Parties

The plaintiff also argues that a forum change would impose severe financial and personal hardship on the plaintiff due to his extended absence from his employment that may put his job in jeopardy, as well as the cost of transporting witnesses. The plaintiff also claims that given the great difficulties that he has faced in securing records, the number of witnesses that will be required to establish his claim for unjust enrichment and quantum merit has been exacerbated. He states that instead of establishing what took place by the records in possession of the defendants, entities and individuals all over the United States will need to be contacted about their testimony and records resulting in an extraordinary expense if this matter is moved to Argentina. Finally, he asserts that all the relevant documents are in English and that most if not all of the witnesses speak English as their first language. Moreover, any damage calculation must be in dollars. Thus, these factors all strongly militate to the forum being in Michigan where the need and the costs associated with translations, interpreters and calculating exchange rates would be almost nonexistent. *See Bybee v. Oper der Standt Bonn,* 899 F.Supp. 1217, 1223 (S.D.N.Y.1995).

Only the last argument weighs in favor of keeping this case in Michigan. Whether this case remains in Michigan or is transferred to Argentina, the plaintiff, who now lives and works in Indiana, will be required to leave his home and job for extended periods of time to litigate this case. *Kryvicky,* 807 F.2d at 517 (the plaintiff's assertions that litigating in alternative forum would be financially difficult did not prevent dismissal where other factors favor alternative forum). Furthermore, whichever forum is chosen, the plaintiff will pay to transport witnesses since they are located across two continents, according to the plaintiff's interrogatory answers.

Nevertheless, the costs of translating English documents and eventually English testimony into another language makes Argentina less convenient and thus weighs in favor of retaining the action. *See Nationsbank of Florida v. Banco Exterior de Espana,* 867 F.Supp. 167, 171 (S.D.N.Y. 1994) (when documentary evidence is in the English language and another language is used in the alternate court, the cost of translating the documents as well as trial or deposition testimony into that language militates against dismissal on grounds of *forum non conveniens* ); *see also Baumgart,* 981 F.2d at 836. However, the documents in the possession of the defendants can readily be translated by them in Argentina, and the Court can allocate that cost in its dismissal order.

The Court finds that the balance of private interests weigh in favor of the

alternate forum because the more weighty factors point to a transaction that took place there, and the majority of the relevant witnesses and other sources of proof are most likely located there. These factors counterbalance other factors that only slightly favor retaining the case in Michigan, which itself has no connection to the transactions or events alleged in the second amended complaint.

### 2. Public Interests

In a *forum non conveniens* motion, "[t]he public interests that must be balanced include any administrative difficulties of courts with clogged dockets; the burden of jury duty on people of a community having no connection with the litigation; the desirability of holding a trial near those most affected by it; and the appropriateness of holding a trial in a diversity case under a foreign state's law." *Ramakrishna,* 172 F.Supp.2d at 930 (citing *Gulf Oil Co.,* 330 U.S. at 508–09, 67 S.Ct. 839; *Kryvicky,* 807 F.2d at 516).

### a. Local Burdens

Although the plaintiff lived for a time in Bay City before he accepted his transfer to Argentina, he no longer has any connection with this jurisdiction and had none when he filed the complaint in this case. It is uncontested that the plaintiff maintained a "home office" in Bay City, Michigan, during his expatriation in Argentina, but that fact, although perhaps pertinent in considering a jurisdictional challenge, will not overcome the other factors that militate in favor of a *forum non conveniens* dismissal. *See Munsell v. La Brasserie Molson Du Quebec Limitee,* 618 F.Supp. 1383, 1388 (E.D.N.Y.1985) (dismissing in favor of a Canadian forum because there were no connections to New York other than plaintiff's domicile). The plaintiff alleges that he was wrongfully fired while in Argentina, the defendants engaged in corrupt practices there and

perhaps elsewhere in the United States and Canada, and there are severance benefits that remain unpaid. None of these claims has any bearing on activity in this jurisdiction or wrongs committed here that need to be righted. Agrium U.S. has a plant in Reese, Michigan, which is within this Court's jurisdiction, but there was no relationship at all between the plaintiff, his claims, and that plant.

The plaintiff asserts that there is a local interest in this matter because the policies that relate to the plaintiff also relate to Agrium U.S. employees in Michigan, and the plaintiff was a resident of Bay City, Michigan for several years. However, all of the activities and decision making giving rise to the alleged wrongful termination occurred outside of Michigan, in either Canada or Argentina. Further, because the plaintiff is no longer residing in this state, Michigan citizens have very little interest in this litigation.

The plaintiff also claims that Michigan has a strong interest in the controversy because the conduct serving as the basis for the friction with the defendants and plaintiff's ultimate dismissal was his refusal to condone the corruption and accounting and record-keeping practices associated with Agrium's operations in Argentina. He also states that Crop Production Services, a subsidiary of Agrium, is currently being investigated for falsifying records within the State of Michigan. The plaintiff cites *DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 28 (2d Cir.2002), and *D'Agostino v. Johnson & Johnson, Inc.,* 133 N.J. 516, 628 A.2d 305 (1993), to support his claim that it is in the interest of the United States to have American courts enforce its laws, specifically the Foreign Corrupt Practices Act and whistleblower legislation. However, the plaintiff does not have a private cause of action in this case under the Foreign Corrupt Practices Act, and his whistleblower claim is part of his retalia-

tion theory that can be brought in the forum where he was employed. It is likely that Argentina would have an equal or greater interest in redressing a wrong committed on its soil involving, among others, its own domestic corporation.

The connection of this case to this jurisdiction is tenuous; this factor weighs in favor of dismissal.

### b. Desirability of Holding a Trial Near Those Most Affected By It

It is undisputed that the employment contract that incorporated the expatriate agreement was negotiated in Canada, Argentina and perhaps the United States; it was signed by the plaintiff in Argentina; the plaintiff resided full-time in Argentina between August 1998 and June 2000; the employment contract was performed in Argentina; and Argentina is the location of the plaintiff's alleged wrongful termination and the defendants' alleged wrongful conduct. The Court believes that Argentina is the forum that is most affected by this litigation, not Michigan. This factor also weighs in favor of dismissal.

### c. Appropriateness of Holding a Trial in a Diversity Case in a Court Which is Familiar with the Governing Law

 The parties did not include a choice of law or choice of forum clause in the employment documents. To determine the law that governs the dispute, the Court must apply the law of the State or country that has the "most significant relationship to the transaction and the parties." Restatement (Second) of Conflict of Laws § 188(1) (1971); *see also Ramakrishna*, 172 F.Supp.2d at 932. To determine which law will apply, the court would consider the following factors: (a) the place of contracting; (b) the place of the negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of the

business of the parties. Restatement (Second) of Conflict of Laws at § 188(2); *Ramakrishna*, 172 F.Supp.2d at 932. The parties dispute the place of negotiating the contract: the plaintiff argues that the negotiations took place in Michigan and the defendants argue that they occurred in Argentina. It is undisputed, however, that the contract was signed by the plaintiff in Argentina and performed there. Any alleged breach of the contract occurred in Argentina as well, either by the defendant's wrongful termination or the plaintiff's purported misconduct. The Court concludes that the majority of the choice of law factors favor Argentina, and it appears that the law of Argentina will apply to the contract claims in this case.

 As to the plaintiff's tort claims, "Michigan presumes that the law of the forum applies unless there is a rational reason to displace it with the law of another location." *Ramakrishna*, 172 F.Supp.2d at 932 (citing *Isley v. Capuchin Province*, 878 F.Supp. 1021, 1023 (E.D.Mich.1995)). In determining whether the law of another forum should apply, or if there is a rational reason to displace Michigan law, Michigan courts often apply a "form of interest analysis," which consists of the following factors: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Ibid.* (citing Restatement (Second) of Conflict of Laws § 145).

In this case, Argentina is the place where the retaliation and ultimate discharge occurred, as well as the conduct leading to the discharge. The varied domiciles, residences and citizenships of the parties renders that factor nondispositive. However, the parties vigorously dispute the locus of "center" of the relationship.

The plaintiff insists that the relationship is centered in Michigan, although it appears that the very nature of the expatriate agreement focused the relationship on the foreign country. The plaintiff's tort claims are inextricably bound to and arise from the employment relationship, which at the time was centered in Argentina. It is likely, therefore, that an American court applying the "form of interest analysis" would favor the law of Argentina as the rules for decision of the tort claims.

This Court observed in *Ramakrishna* that "applying the law of another country is quite different from applying the law of another state" and, therefore, weighed that factor in favor of dismissal. *Ramakrishna*, 172 F.Supp.2d at 933. Here, because the law of Argentina would likely apply, this factor also weighs in favor of dismissal based on *forum non conveniens* grounds.

### III. Conclusion

The Court finds that the defendants have met their burden of demonstrating that there is a reasonable alternative forum in Argentina for the adjudication of the plaintiff's claims, and both the private and public interest factors weigh in favor of the alternate forum. The Court is mindful that a minor portion of the plaintiff's second amended complaint contains allegations that defendants other than Agroservicios interfered with the plaintiff's business opportunities after he returned from Argentina, and Argentina may not be an appropriate forum for those claims. However, the plaintiff may sever those claims and file them in an appropriate American forum, although likely not in Michigan, if he chooses. The Court, therefore, finds that dismissal is appropriate provided the defendants satisfy conditions that will insure the equitable allocation of the expenses of litigating these multinational claims.

Accordingly, it is **ORDERED** that the motion by defendants Agrium US, Inc., and Agrium, Inc. to dismiss based on *forum non conveniens* [dkt# 17] is **CONDITIONALLY GRANTED.**

It is further **ORDERED** that the motion by defendant Agroservicios Pampeanos S.A. to dismiss [dkt# 21] is **CONDITIONALLY GRANTED IN PART** on the ground of *forum non conveniens* and **DENIED IN PART** as moot in all other respects.

It is further **ORDERED** that the defendants, Agroservicios Pampeanos S.A., Agrium, Inc., and Agrium US, Inc., and each of them, shall file a statement certifying that they will 1) accept Argentine jurisdiction and service of process; 2) waive any statute of limitations defense; 3) make all of the witnesses under their control available to testify in Argentina; 4) translate, at their expense, all relevant documents into the Spanish language; 5) allow discovery in the Argentine court of any materials that would be available under the Federal Rules of Civil Procedure in a United States Court; and 6) pay any judgment rendered by the Argentine court, subject to their right to appeal under Argentine law.

It is further **ORDERED** that the defendants shall file such certificate on or before **October 28, 2004.** Upon the filing of the certificate, the Court will enter an unconditional order of dismissal without prejudice.

It is further **ORDERED** that the motion by defendants Agrium US, Inc., and Agrium, Inc. to dismiss pursuant to Rule 12(b)(2) and to dismiss counts 17–22; 27,-29, and 38 of first amended complaint [dkt# 16] is **DENIED** as moot.

It is further **ORDERED** that the plaintiff's motion for an *in camera* inspection [dkt# 115] is **DENIED** as moot.